**UNITED CITIES GAS COMPANY,**

**and**

**Horton Highway Utility District of Marshall, Rutherford, and Williamson Counties, Tennessee, Plaintiffs–Appellees,**

v.

**Thomas V. WIGINGTON and Thomas V. Wigington, IV,**

**and**

**Tennessee Association of Utility Districts, Defendants–Appellants.**

Supreme Court of Tennessee, at Nashville.

Sept. 3, 1991.

Jack M. Irion, James L. Bomar, Jr., Bomar, Shofner, Irion & Rambo, Shelbyville,

John C. Leonard, Jr., Lewisburg, for plaintiffs-appellees.

Cecil D. Branstetter, Carrol D. Kilgore, Branstetter, Kilgore, Stranch & Jennings, Nashville, for defendants-appellants.

## OPINION

REID, Chief Justice.

The Tennessee Association of Utility Districts, et al., defendants-appellants, appeal from the decision of the Court of Appeals affirming the trial court's judgment that a contract between United Cities Gas Company (United Cities) and Horton Highway Utility District (Horton District), plaintiffs-appellees, is valid. The issue presented for review by the appeal is whether the utility district has the legal authority to sell its system to a purchaser that is not a municipality or a county. Review of the record and the applicable statutes discloses that utility districts have not been granted that authority by the General Assembly, and, therefore, the contract entered into between United Cities and Horton District is not valid.

Horton District was organized in 1958 pursuant to the Utility District Law of 1937, T.C.A. §§ 7–82–101, *et seq.* Pursuant to that statute, Horton District is a " 'municipality' or public corporation," a "body politic and corporate with power of perpetual succession." T.C.A. § 7–82–301(a)(1). Horton District owns and operates a natural gas distribution system in an area composed of portions of Marshall, Rutherford, and Williamson Counties. United Cities is a private, investor-owned corporation authorized to do business in Tennessee and engaged in the business of distributing natural gas in several cities in Tennessee pursuant to franchises issued by those cities. United Cities is regulated as a "public utility" by the Tennessee Public Service Commission. T.C.A. §§ 65–4–101, –104.

Horton District and United Cities entered into an agreement dated November 23, 1988, for the sale of the system, including all real and personal property and "franchise or other service rights," the distribution of Horton District's assets (the proceeds from the sale), and the dissolution of Horton District as a legal entity. The sale was conditioned upon approval by the Public Service Commission, the county executives of Marshall, Rutherford, and Williamson Counties, the chancery court, and the state comptroller of the treasury.

The county executives found the contract for the sale of the system and distribution of the proceeds from the sale to be "fair, just and reasonable and in the public interest" and approved the contract. The county executives' order provides that upon approval of the sale by the Tennessee Public Service Commission and distribution of the assets, "the Executives shall declare that said District be dissolved."

The Utility District Law of 1937 (T.C.A. §§ 7–82–101, *et seq.*) authorizes the development and operation of systems for the furnishing of water, sewage disposal, natural gas, garbage collection, police and fire protection, street lighting, recreational facilities, and other services. Part 2 of Chapter 82 sets forth the procedure whereby a utility district is created, Part 3 states the powers of the district and the manner of operation, Part 4 provides for audits and the regulation of rates charged for services, Part 5 authorizes the issuance of revenue bonds and notes for capital expenditures, and Part 6 authorizes multi-county districts. The Utility District Law contains no express provision for the termination or dissolution of a district, except in Part 2, which authorizes the merger or consolidation of two or more utility districts and also the sale and transfer of a utility district system to a municipality, metropolitan government, or county.

United Cities and Horton District acknowledge that the sale of the system other than to a municipality or county and dissolution of the district is not specifically authorized by statute. However, they contend that the authority is contained in the general grant of powers to the district and the board of commissioners. The parties to the contract find the authority for Horton District to execute and perform according to the contract in the provisions of T.C.A.

§ 7–82–304, which grants to the district the power to

(3) Acquire by purchase, gift, devise, lease or exercise of the power of eminent domain or other mode of acquisition, hold and dispose of real and personal property of every kind within or without the district, whether or not subject to mortgage or any other liens;

(4) Make and enter into contracts, conveyances, mortgages, deeds of trust, bonds or leases;

(5) Incur debts, to borrow money, to issue negotiable bonds and to provide for the rights of holders thereof;

(6) Fix, maintain, collect and revise rates and charges for any service;

(7) Pledge all or any part of its revenues;

(8) Make such covenants in connection with the issuance of bonds, or to secure the payment of bonds, that a private business corporation can make under the general laws of the state, notwithstanding that such covenants may operate as limitations on the exercise of any power granted by this chapter.

The contracting parties also cite for authority to enter into such a contract the provisions of T.C.A. §§ 7–82–306 and 7–82–309(a)(4). Under T.C.A. § 7–82–306,

[a]ny district created pursuant to the provisions of this chapter shall be vested with all of the powers necessary and requisite for the accomplishment of the purpose for which such district is created, capable of being delegated by the legislature. No enumeration of particular powers herein created shall be construed to impair or limit any general grant of power herein contained nor to limit any such grant to a power or powers of the same class or classes as those enumerated. The district is empowered to do all acts necessary, proper or convenient in the exercise of the powers granted herein.

Furthermore, T.C.A. § 7–82–309(a) empowers the commissioners of a utility district to

(4) Lease, purchase, sell, convey and mortgage the property of the district and to execute all instruments, contracts, mortgages, deeds or bonds on behalf of the district in such manner as the board shall direct; ....

The powers granted under § 7–82–304 are general corporate powers necessary for the transaction of the district's business. The exercise of these powers is, however, limited by the heading of § 7–82–304— "Powers in *carrying out purposes*" (emphasis added). Those powers granted under that section can be exercised only in furtherance of the purposes for which the district was created which, in this case, was the distribution of natural gas. The same limitation on the exercise of "general implementing powers" is found in § 7–82–306. The vesting of those powers is plenary in scope, not confined to those enumerated, but is limited to those powers "necessary and requisite for the accomplishment of the purpose for which such district is created." Section 7–82–309 designates the board of commissioners as the executive and administrative officials of the district and provides that they are authorized to exercise the powers granted to the district. This section does not, however, vest in the commissioners any powers not possessed by the district. It only authorizes the commissioners to act on behalf of the district. *See* § 7–82–301(a). Pursuant to these statutes, relied upon by the appellees, the district, acting by and through its board of commissioners has, in addition to the powers peculiar to the providing of utilities to the public, the general power to acquire, hold, use, encumber, and sell real and personal property, enter into contracts and perform in accordance with the terms thereof, protect and enforce its rights by suits in court, and otherwise do all acts incident to the *development* and *operation* of a public utility.

The power to develop and operate a public utility does *not* include the power to sell the system and terminate the corporate existence of the district. Disposal of all corporate assets of the district is contrary to and in violation of the duty to operate the district for the benefit of the district's customers. Under the statute, the obligation to operate the system can be avoid-

ed only by consolidation or merger with another utility district or transfer of the system to a municipality or a county. Sale of the system and termination of the district's corporate existence is inconsistent with the findings, upon the creation of the district, "[t]hat the public convenience and necessity requires the creation of the district." T.C.A. § 7–82–202(a)(1).

As stated previously, T.C.A. § 7–82–301(a)(1) provides that utility districts such as Horton District are municipalities. Other municipalities are not authorized to sell themselves out of existence by sale of all assets to a private entity. Instead, such other municipalities must comply with express statutory provisions regarding merger, T.C.A. §§ 6–51–401 to –410, abolition of municipal charters, T.C.A. §§ 6–52–201 to –206, or forfeiture of charters, T.C.A. §§ 6–52–301 to –304. No method of dissolution, other than those expressly provided for by statute, may be utilized by a municipality. *See, e.g., Caldwell v. Harris*, 185 Tenn. 209, 204 S.W.2d 1019, 1022 (1947). Similarly, the Utility District Law of 1937 expressly provides mechanisms by which utility districts may cease operation. Under present statutory enactments, such dissolutions may be effected only pursuant to the merger and consolidation provisions of T.C.A. §§ 7–82–202(e) and (f).

Utility districts, being municipalities, "may exercise only those express or necessarily implied powers delegated to them by the Legislature in their charters or under statutes." *City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn.1988). The power to merge or consolidate with another utility district or a municipality is expressly granted to Horton District by applicable statutes. The power to sell all its assets to a private enterprise and thus cease operation is not so expressed in Title 7, Chapter 82.

This Court cannot conclude that the power of a utility district to sell its entire system to a private corporation is "necessarily implied" by the Utility District Law of 1937. In fact, that enactment recognizes that the district is vested only with "all the powers necessary and requisite for the accomplishment of the purpose for which such district is created." T.C.A. § 7–82–306. Clearly, a utility district is not created for the purpose of conveying itself out of existence. The power to sell all its assets and its system to a private enterprise is, therefore, not an expressed or implied power of a utility district.

Because Horton District had no statutory authorization to convey all its assets to United Cities, thus effectively dissolving the district, the making of the contract for sale between the two parties was *"ultra vires* and void or voidable." *City of Lebanon v. Baird*, 756 S.W.2d at 241. The judgments of the trial court and Court of Appeals upholding the validity of that contract, therefore, are reversed. Costs will be borne by the appellees.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.