The HUNTSVILLE UTILITY DISTRICT OF SCOTT COUNTY, TENNESSEE, Plaintiff–Appellant,

v.

GENERAL TRUST COMPANY, Trustee, Honorable Charles W. Burson, Attorney General, and Norma Jean Potter, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section.

March 6, 1992.

Application for Permission to Appeal Denied by Supreme Court May 26, 1992.

Cecil D. Branstetter, Carrol D. Kilgore, Branstetter, Kilgore, Stranch & Jennings, Nashville, for plaintiff-appellant.

Don Stansberry, III, Baker, Worthington, Crossley, Stansberry & Woolf, Huntsville, co-counsel for plaintiff-appellant.

N.B. Forrest Shoaf, Bass, Berry & Sims, Nashville, for defendant-appellee, General Trust Co.

Charles W. Burson, Atty. Gen. & Reporter, Byron M. Jones, Asst. Atty. Gen., Nashville, for defendant-appellee, the State of Tenn.

Elizabeth Ashbury, Jacksboro, for defendant-appellee, Norma Jean Potter.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff-appellant, The Huntsville Utility District of Scott County, Tennessee (Huntsville), from the trial court's order dismissing Huntsville's complaint for failure to join necessary parties.

The pertinent facts are as follows:

Defendant, General Trust Company (General Trust), acts as a financial adviser and/or fiscal agent for a number of local governments and utility districts. General Trust also acts as registrar and paying agent for local governments issuing municipal bonds. In the fall of 1988, General Trust and Huntsville entered into discussions concerning Huntsville issuing new bonds to finance the repurchase of Huntsville's bonds from Farmers Home Administration. During the discussions General Trust recommended that the new bond resolution include a covenant that there be no change in the size or manner of selecting Huntsville's board members. Huntsville and General Trust subsequently entered into a fiscal agency agreement whereby General Trust agreed to develop a plan of refinancing for Huntsville's bonds and Huntsville agreed to pay General Trust a

percentage of the par value of the new bonds.

On 21 November 1988, the Scott County Commission adopted a resolution to request the Scott County legislative delegation to draft and introduce legislation that would require members of the Huntsville Board to be elected by Huntsville's customers. On 19 December 1988, the Commission adopted a resolution authorizing that the draft legislation be included in their legislative package. On 1 February 1989, Senate Bill No. 1028 (hereafter the Act) was introduced in the legislature. The bill provided for an increase in the size of Huntsville's board from three to five members and required that members of the Board be elected by Huntsville's customers. On 8 February 1989, its companion was introduced in the House of Representatives. Subsequently the members of the Huntsville Board were advised that legislation was pending to change the Board's size and manner of selection.

On 21 February 1989, the Huntsville Board adopted a refunding bond resolution that included a covenant requiring the size and manner of selection of the Huntsville Board to remain the same during the term of the bonds.

Section 9(j) of the Huntsville 1989 bond resolution is as follows:

So long as the Bonds or any Parity Bonds shall remain outstanding, the System and its operations and revenues will continue to be controlled by the Governing Body, which shall consist of three (3) and only three (3) members, whose mode of selection shall not be changed and whose authority and control over the System shall not be diminished or reduced during the term of the Bonds or Parity Bonds.

On 6 March 1989, Huntsville issued $1,400,000.00 Waterworks Revenue Refunding Bonds, Series 1989, pursuant to the Bond Resolution. On 24 May 1989, the Act was passed by the House and Senate and subsequently signed by the Governor. The Scott County Commission approved the Act by a two-thirds vote on 18 September 1989.

On 20 March 1990, the general manager of Huntsville contacted General Trust and advised it of the legislation and the vote of the Commission and inquired if this would put Huntsville in violation of the bond resolution. That same day the president and chief executive officer of General Trust, Danny Neil Bates, sent a letter to Huntsville's Board informing the Board that an election of the members of the Board would violate covenant 9(j) of the bond resolution.

On 21 May 1990, Huntsville filed its complaint seeking a declaratory judgment of the constitutionality of the Act, against General Trust and Attorney General Burson. Huntsville alleged, *inter alia*, that the 24 May 1989 Act violated state and federal prohibitions by impairing the obligation of contract between Huntsville and General Trust.[1] General Trust answered the complaint on 19 June 1990 admitting that the Act was unconstitutional. On 16 July 1990, Huntsville filed a motion for summary judgment. On 28 December 1990, the Attorney General filed a cross-motion for summary judgment alleging, *inter alia*, that Huntsville's complaint failed to present a justiciable controversy because necessary parties had not been joined.

On 22 April 1991, the trial court denied both motions for summary judgment, entered an order finding that necessary parties, *i.e.*, the bondholders and customers of Huntsville, had not been joined and allowed Huntsville thirty days to add these parties. Huntsville filed a motion to rehear on 30 April 1991, specifically requesting the court to relieve it of the obligation of joining its

---

1. Norma Jean Potter, one of plaintiff's customers, filed a mandamus action in the Chancery Court for Scott County seeking to force Huntsville's incumbent Board members to comply with the Act. Although the Chancellor for Scott County endorsed the fiat on May 25, 1990, the complaint for mandamus has a file date of May 22, 1990. The action in Scott County is currently pending. On the previous day the complaint in this case was filed in the Chancery Court for Davidson County. Huntsville subsequently amended its complaint to join Norma Jean Potter as a defendant in this case.

bondholders as defendants. The court denied the motion on 16 May 1991. Huntsville then amended its complaint on 16 May to add one of its customers as a defendant and moved the court to hold that there had been no failure to join indispensable parties. On June 19, 1991, the trial court entered an order dismissing the complaint on the ground that Huntsville had failed to join necessary and indispensable parties pursuant to Tennessee Code Annotated, Section 29–14–107(a) and Tennessee Rule of Civil Procedure 19.02.

Huntsville has presented three issues with several sub-issues. We discuss these seriatim with additional facts necessary to address the issue.

Huntsville's first issue is:

In a declaratory judgment action attacking the constitutionality of legislation of local application changing the method of filling vacancies on the Board of Commissioners of the [Huntsville] utility district contrary to a bond covenant, which did not join as parties any customer of the utility district or any of its bondholders, whether the Court, in considering cross-motions for summary judgment, erred in ruling that "necessary parties to this lawsuit have not been joined", in holding that both customers and bondholders were necessary parties and in holding that such parties were indispensable with the result that the action should be dismissed, in spite of the fact that there was no showing that any bondholder was subject to the jurisdiction of the Court, and that the disclosure of the identify [*sic*] of any bondholder is prohibited by statute, T.C.A. § 9–19–109.

The Attorney General insists that Huntsville's customers and bondholders are necessary parties to this declaratory judgment action.

Tennessee Code Annotated, Section 29–14–107(a) provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."

A court of equity is vested with discretion to determine who should be made parties to proceedings for declaratory judgment. *Powers v. Vinsant*, 165 Tenn. 390, 392, 54 S.W.2d 938 (1932). Whether to grant or deny a declaratory judgment is largely discretionary with the chancellor and the action of the chancellor in refusing to make such a declaration should not be disturbed on appeal unless such refusal is arbitrary. *Southern Ry. Co. v. Atlantic Coast Line R. Co.*, 209 Tenn. 177, 182, 352 S.W.2d 217, 219 (1961); *Love v. Cave*, 622 S.W.2d 52, 55 (Tenn.App.1981). "The nonjoinder of necessary parties is fatal on the question of justiciability, which, in a suit for a declaratory judgment, is a necessary condition of judicial relief." *Wright v. Nashville Gas & Heating Co.*, 183 Tenn. 594, 598, 194 S.W.2d 459, 461 (1946).

The Attorney General argues that both the plaintiff's customers and bondholders have interests that would be affected by a declaration concerning the constitutionality of the Act and insists that these interested persons must be made parties before the court can grant declaratory relief affecting their interests. Our Supreme Court, in *United Cities Gas Co. v. Wigington*, 815 S.W.2d 506, 508 (Tenn.1991) found that utility districts exist and operate for the benefit of their customers.

## THE CUSTOMERS

Here, the challenged Act grants Huntsville's customers the right to elect the members of the Huntsville utility board. Huntsville's incumbent board members refused to stand for election. Instead they adopted a bond covenant in an attempt to preempt the Act. They filed this lawsuit challenging the constitutionality of the Act in the Chancery Court for Davidson County and did not name any of their customers as defendants at the time it was originally filed. Only General Trust Company, the Agent of Huntsville, and the Attorney General were named as defendants. General Trust immediately conceded that the Act was unconstitutional.

One of plaintiff's customers, Norma Jean Potter, filed a mandamus action in Chancery Court for Scott County seeking to force Huntsville's incumbent board members to comply with the Act. Although the Chancellor for Scott County endorsed the fiat on 25 May 1990, the complaint for mandamus has a file date of 22 May 1990. The action in Scott County is currently pending. On the previous day the complaint in this case was filed in the Chancery Court for Davidson County. Huntsville subsequently amended its complaint to join Norma Jean Potter as a defendant in this case. It is the State's insistence that all of Huntsville's customers have the same interest in the outcome of the suit as Norma Jean Potter and should be given the same notice and opportunity to be heard.

Huntsville argues that its customers are not interested parties within the meaning of Tennessee Code Annotated, Section 29–14–107, because they would lack standing to bring suit for declaratory relief. In support of this argument, Huntsville cites two cases which hold that taxpayers lack standing to sue municipal corporations absent some threat of increased taxes or some special interest not shared by all other citizens and residents. Those cases are *Wright v. Nashville Gas & Heating Co.,* 183 Tenn. 594, 194 S.W.2d 459 (1946) and *Perry v. City of Elizabethton,* 160 Tenn. 102, 22 S.W.2d 359 (1929). As pointed out by the Attorney General, the interests of the plaintiffs in both *Wright* and *Perry* were more ethereal than the interest of Huntsville's customers. In *Wright,* plaintiff sued in his capacity as a taxpayer and property owner to have the charter and franchise of the Nashville Gas and Heating Company granted by the City of Nashville declared invalid to the extent that the charter and franchise empowered Nashville Gas to sell natural gas rather than manufactured gas. 183 Tenn. at 596, 194 S.W.2d at 460. In that case the Court held that plaintiff had failed to show any potential increase in his tax burden or any "special interest" that gave him standing to bring a suit for declaratory relief and that the plaintiff had failed to join the City of Nashville as a necessary party to the suit. 183

Tenn. at 603, 194 S.W.2d at 463. The Court suggested that only another agency which was seeking to sell natural gas in Nashville would have standing to challenge the authority of Nashville Gas and Heating Company to sell natural gas. 183 Tenn. at 601, 194 S.W.2d at 462.

In *Perry,* the plaintiff sued in his capacity as a citizen, resident, property owner, and taxpayer of the city of Elizabethton and challenged the constitutionality of an amendment to the charter of the city of Elizabethton. 160 Tenn. at 103, 22 S.W.2d at 359. The Court, in *Perry,* found that the record did not demonstrate that the plaintiff had a sufficient interest to maintain the suit because he did not allege that the amendment had the effect of increasing his tax burden. 160 Tenn. at 106, 22 S.W.2d at 360. Although the amendment challenged by the plaintiff apparently authorized the holding of some kind of an election, the plaintiff was not suing in his capacity as a voter and was not seeking to protect any voting rights granted him under the amendment or the charter. In *Perry,* all of the defendants, except the Attorney General, were in agreement with the plaintiff in his assertion that the challenged amendment was unconstitutional. The Court found that there was no party defendant with a sufficient adverse interest to authorize the chancellor to assume jurisdiction of the complaint. 160 Tenn. at 105–107, 22 S.W.2d at 360.

The purpose of the requirement of standing is to assure that the matter before the court presents a justiciable controversy. The issue is whether the party seeking relief has alleged "such a personal stake in the outcome of the controversy to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Other jurisdictions have squarely held that voters who allege facts showing disadvantage to themselves as individuals have standing to sue. *Baker,* 369 U.S. at 206, 82 S.Ct. at 702; *Colegrove v. Green,* 328 U.S.

549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946); *Preisler v. Doherty*, 364 Mo. 596, 265 S.W.2d 404, 408–09 (1954). In a case involving whether a taxpaper had standing to challenge a charter amendment changing the method of electing councilmen from election at large to election by districts, the Colorado Supreme Court stated:

> [W]e can conceive of no greater interest a taxpayer can have than his interest in the form of government under which he is required to live, or in any proposed change thereof. In the last analysis, this interest may well exceed any pecuniary interest he may have. The interest and concern of plaintiff as a taxpayer is not primarily confined to himself alone, but is of "great public concern"; particularly so when it is apparent that the municipality and its officers have avoided doing anything that would raise the question of the validity of their acts under the charter amendment now under attack. If a taxpayer and citizen of the community be denied the right to bring such an action under the circumstances presented by this record, then wrong must go unchallenged, and the citizen and taxpayer reduced to mere spectator without redress. We can think of none who have a better right.

*Howard v. City of Boulder*, 132 Colo. 401, 290 P.2d 237, 238 (1955).

Here, the customers of Huntsville have a great interest in the constitutionality of the Act which grants them the right to vote for their utility commissioners. We are of the opinion that the trial court's determination that Huntsville's customers are proper necessary parties to this suit was correct. Huntsville also relies on *Shelby County Board of Commissioners v. Shelby County Quarterly Court*, 216 Tenn. 470, 392 S.W.2d 935 (1965), and *Coleman v. Henry*, 184 Tenn. 550, 201 S.W.2d 686 (1947). We are of the opinion that both of those cases are distinguishable from the instant case. In *Shelby County Board of Commissioners* the Court held that it was not necessary to join certain county employees in a case disputing the relative duties and responsibilities of two county governmental bodies. 216 Tenn. at 480–81, 392 S.W.2d at

940. The Court determined that both governmental bodies were necessary parties to the suit and that the interests of the various county employees would be only incidentally affected by the declaration sought. The court held that the failure to join the county employees was not fatal on the issue of justiciability of the declaratory judgment. 216 Tenn. at 480–81, 392 S.W.2d at 940. This is not so in the instant case. Huntsville's customer's right to vote for their utility commissioners will be directly and fundamentally affected by the declaration sought.

In *Coleman*, the court found that a citizen, taxpayer, and voter demonstrated no special interest in a declaration on a proper interpretation of a campaign financial disclosure statute where he filed his complaint three months after the primary election. The court held that there was at the time of the filing of the complaint no justiciable controversy between the plaintiff and the defendant campaign manager who had made the disclosure for several successful candidates. 184 Tenn. at 553–54, 201 S.W.2d at 687. In the instant case Huntsville's customers have an immediate interest in a declaration construing the constitutionality of the Act which gives them the right to vote for their own utility commissioners.

## THE BONDHOLDERS

■ We are also of the opinion that Huntsville's bondholders have an interest that would be affected by a declaration concerning the constitutionality of the Act. The bondholders have the exclusive right to enforce Covenant 9(j) of the bond resolution. If the Act is constitutional, then Covenant 9(j) will not be enforceable. The bondholders have a right to notice and an opportunity to be heard on this question.

Huntsville insisted in its complaint that the defendant General Trust is the "Trustee and Paying Agent under the terms of [Huntsville's] Refunding Bond Resolution" and, by inference, contends that General Trust can represent the interest of the bondholders. Nothing in the Bond Resolution gives General Trust the power to en-

force bond covenants on behalf of bond-holders. General Trust is identified in the Bond Resolution only as a registrar, paying agent, and registration agent. It is not the trustee. However, even if General Trust were the trustee, a trustee is not given authority to enforce bond covenants on behalf of bondholders in every bond issue. The authority to enforce bond covenants on behalf of bondholders is typically not given to trustees for bonds issued by municipalities for their own purposes. Municipalities are afforded protections by the State Comptroller's office, the Utility and Management Review Board, and the Waste Water Financing Board.

There is nothing in the Bond Resolution that gives General Trust the authority to enforce bond covenants on behalf of bond-holders. There is no trust indenture or other document in this record that gives General Trust the power to enforce the bond covenants on behalf of the bondhold-ers. Under the resolution, only the bond-holders themselves have that authority and, so far as the record shows, the bond-holders have not delegated that authority to General Trust.

Huntsville insists that Tennessee Rules of Civil Procedure 19.01 and 19.02 do not require the joinder of parties 1) who are not subject to the jurisdiction of the court; 2) whose ability to protect their interests will not be impaired or impeded if they are not joined; and 3) whose absence would not leave any of the parties subject to a sub-stantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of this claimed interest.

It is the State's insistence that the re-quirements of Tennessee Rules of Civil Procedure 19.01 and 19.02 are independent of the requirements of the Declaratory Judgments Act. Tenn.Code Ann. § 29–14–101, *et seq.* Rules 19.01 and 19.02 establish general procedural rules for requiring the joinder of indispensable parties in all types of cases. Parties seeking declaratory re-lief must also satisfy the more specific requirements of the Declaratory Judg-ments Act before the courts have jurisdic-tion to grant declaratory relief.

Because of the nature of declarato-ry relief, the Declaratory Judgments Act makes it incumbent that every person hav-ing an affected interest be given notice and an opportunity to be heard before declara-tory relief may be granted. The Declarato-ry Judgments Act imposes stricter require-ments than those imposed generally by Tennessee Rules of Civil Procedure 19.01 and 19.02. While joinder may not be re-quired under Rules 19.01 and 19.02, it is clearly required in a suit for declaratory relief pursuant to Tennessee Code Annotat-ed, Section 29–14–107(a) which provides that: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be af-fected by the declaration, and no declara-tion shall prejudice the rights of persons not parties to those proceedings."

However, we are of the opinion that Ten-nessee Rules of Civil Procedure 19.01 and 19.02 also would require joinder of Hunts-ville's bondholders. Without joinder of the bondholders, there is no party who can assert that an election of the plaintiff's board by its customers will cause bondhold-ers to seek enforcement of the bond cove-nant that forbids such an election. General Trust has no authority to assert these rights on behalf of the bondholders.

If it is the plaintiff's contention that the Act constitutes a substantial impairment of contract, then the other party to that con-tract must be joined. If the bondholders do not care to enforce this covenant, the impairment is not substantial and the Act should not be held unconstitutional on that basis. Therefore, the absence of bondhold-ers means complete relief cannot be accord-ed among those already parties and Rule 19.01(1) would require joinder.

Further, if the courts reach the merits and decide the Act is unconstitutional, bondholders who were not parties to the litigation would not be bound by the courts' decision. Tenn.Code Ann. § 29–14–107(a). The bondholders subsequently could elect to sue Huntsville asserting the unconstitu-tionality of the Act as an impairment of contract. The State might find it neces-sary to defend the constitutionality of the

Act once again. Thus, failure to join bondholders in this case could result in inconsistent rulings and unnecessary duplicative litigation. The interest of judicial economy dictates that the bondholders be made parties so these issues can be resolved once and for all. For this reason, Tennessee Rule of Civil Procedure 19.01(2)(ii) requires joinder of the bondholders.

Tennessee Rule of Civil Procedure 19.02 provides:

> If a person as described in Rule 19.-01(1)—(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it; or should be stayed or dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether or not a judgment rendered in the person's absence will be adequate; and (4) whether or not the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

A judgment rendered in the absence of the bondholders would be prejudicial to Huntsville's utility customers and to the State if there is, in fact, no substantial conflict between the interest of bondholders and the requirements imposed by the Act. If the bondholders do not care if an election of Huntsville's board is by its customers, then there is no substantial impairment of contract and the Act should not be declared unconstitutional. This prejudice cannot be avoided by limiting the scope of the judgment.

 Huntsville has an adequate remedy if the judgment of the Chancellor in dismissing the action is upheld. Huntsville may comply with the presumptively constitutional statute and address these issues if the bondholders bring suit to enforce Covenant 9(j).

> "An unconstitutional act is not void but voidable only, and ministerial officers are therefore authorized to treat every act of the Legislature as *prima facie* valid and they are not liable for any acts committed under an unconstitutional statute on account of its unconstitutionality."

> ....

> "Every act of the Legislature is presumptively constitutional until judicially declared otherwise, and the oath of office 'to obey the Constitution,' means to obey the Constitution, not as the officer decides, but as judicially determined."

*Bricker v. Sims*, 195 Tenn. 361, 368, 259 S.W.2d 661, 664 (1953). Even though it may appear unconstitutional, the statute must be observed until it is declared void by an authoritative tribunal. *O'Brien v. Rutherford County*, 199 Tenn. 642, 647, 288 S.W.2d 708, 710 (1956). Parties who deal with each other on faith in relation to such a statute may not invoke the court's aid to undo what they may have done in reliance upon that statute. *Bayless v. Knox County*, 199 Tenn. 268, 279, 286 S.W.2d 579, 584 (1955).

The plaintiff may assume that the act is constitutional until it is judicially determined otherwise.

Plaintiff relies upon two cases, *Kelly v. Cherokee Insurance Co.*, 574 S.W.2d 735 (Tenn.1978), and *Estate of Wilson v. Arlington Auto Sales, Inc.*, 743 S.W.2d 923 (Tenn.App.1987), for its argument that bondholders are not necessary parties. In *Kelly*, the Court held that an insured, against whom the injured party had already obtained a judgment, was not a necessary party in a suit by the injured party against the insurance carrier. 574 S.W.2d at 739. The terms of the insurance contract expressly authorized any person who had secured a judgment against the insured to recover from the insurance carrier to the extent of the insurance afforded under the policy. *Id.* The insured had no interest in that controversy since the injured party already had a judgment against him.

In *Estate of Wilson,* the court determined that a bank was not a necessary party in a dispute over the enforceability of a credit life insurance policy where the bank's interest was more than adequately protected without its being joined as a party. 743 S.W.2d at 928–29. The court expressly found that neither the interest of the bank nor the interests of other parties suffered from the bank's absence from the action.

The interest of the bondholders in the instant case may be affected by the declaration sought. There is no party to this suit that is authorized to assert the interest of the bondholders and the interest of Huntsville's customers may suffer from the absence of the bondholders to this suit. The instant case is distinguishable from *Kelly* and *Estate of Wilson.*

██ Huntsville contends that it is absolutely impossible to discover the identities of its bondholders. We are of the opinion that this contention is without merit. Tennessee Code Annotated, Section 9–19–109 provides:

> The identity of any owner of, or any other information by or from which may be determined the identity of any owner of, any public obligation issued by any issuer shall be treated as confidential and not open to public inspection. The confidentiality herein established shall not be deemed to have been extinguished but shall remain inviolate in cases where such information is in the possession of banks, trust companies, financial institutions, or other financial intermediaries of the issuer, including, but not limited to, registration, paying or transfer agents.

We are of the opinion that Tennessee Code Annotated, Section 9–19–109 should be construed in the context of the rest of the Tennessee Public Obligations Registration Act and the Public Records laws of Tennessee. When doing so it is clear that this section was intended to prevent routine public access to the identities of bondholders pursuant to the Tennessee Public Records law.

Tennessee Public Records law requires that all state, county and municipal records be open for public inspections unless otherwise provided by law. Tenn.Code Ann. § 10–7–503(a). The General Assembly has created numerous statutory exceptions to the general policy of public access to records. *See, e.g.,* Tenn.Code Ann. § 10–7–504. These exceptions from disclosure under the Public Records law do not make such information privileged from disclosure in every other context.

Tennessee Code Annotated, Section 10–7–504 provides that certain records maintained by state agencies "shall be treated as confidential and shall not be open for inspection by members of the public." The Court of Criminal Appeals, in *State v. Fears,* 659 S.W.2d 370 (Tenn.Cr.App.1983), *cert. denied* 465 U.S. 1082, 104 S.Ct. 1450, 79 L.Ed.2d 768 (1984), interpreted this language. In *Fears,* the court considered whether certain medical records made confidential by statute could be disclosed in the context of a criminal trial. The court stated:

> We do not think that these code sections are applicable. While they protect medical records of patients from members of the public, the statutes do not protect the medical records from the courts and public officials, such as the District Attorney General, in the performance of their official duties.... Courts, grand juries, and district attorneys are not embraced in the term "public" as used in these statutes. The records may be subpoenaed to court at the request of any party to a litigation acting in good faith.

*Id.* at 376.

We are of the opinion the same construction should be applied to Tennessee Code Annotated, Section 9–19–109. Such a construction is consistent with the confidentiality provisions in the registered public obligations statutes adopted in contiguous states. Section 159E–11 of the General Statutes of North Carolina provides: "Records, with regard to the ownership of or security interest in registered public obligations, are not subject to inspection or copying under any law of this State relating to the right of the public to inspect or

copy public records, notwithstanding any law to the contrary." Arkansas Statutes Annotated, Section 19-9-413, contains identical language. The purpose of the provision protecting the identity of bondholders from public inspection was to except this information from the Public Records laws and not to create some broader privilege from disclosure.

Plaintiff cannot seriously contend that this statute prevents its own registration agent from disclosing the identities of Huntsville's own bondholders to Huntsville. Under Huntsville's literal construction of this statute, law enforcement officials investigating allegations of fraud in connection with the sale of bonds would be powerless to compel disclosure of the identities of the bondholders. Bondholders contemplating civil lawsuits for fraud could not obtain the names of other persons similarly situated even with a protected order limiting disclosure to the public.

We can find no rationale for extending a kind of secrecy to the identities of bondholders. This statute was not intended to prevent access to the identities of bondholders where that information is necessary to resolve matters in litigation. Such a construction is not consistent with case law construing comparable provisions of related confidentiality statutes. Tennessee Code Annotated, Section 9-19-109 does not prevent Huntsville from discovering the identities of its bondholders.

Huntsville argues that the legislature has provided confidential treatment of the identities of bondholders for the protection of bondholders. We are of the opinion that it is nonsense to suggest that bondholder confidentiality is protected so completely that bondholders rights can be decided by the courts without giving them notice and an opportunity to be heard. There is no case for declaratory judgment without these necessary parties. The trial court properly dismissed Huntsville's complaint.

Because of our resolution of Huntsville's first issue, we pretermit all other remaining issues raised by the parties.

The judgment of the trial court is affirmed with costs assessed to Huntsville

and the cause remanded to the trial court for the collection of costs and for any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.