IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
January 19, 2011 Session

## MICHAEL ADLER
v.
## DOUBLE EAGLE PROPERTIES HOLDINGS, LLC
v.
## AIRWAYS COMMONS, LLC

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-0908-2     Arnold B. Goldin, Chancellor**

_____

**No. W2010-01412-COA-R3-CV - Filed March 14, 2011**

_____

In this declaratory judgment action, the parties sought interpretation of a real estate purchase contract. The contract between the buyer and the seller provided for the assignment of all leases on the property and proration of rents to the buyer. The parties disputed whether these provisions contemplated a separate agreement between the seller and a third party. At the behest of the parties, the trial court construed both agreements and granted summary judgment to the buyer. On appeal, we raise, *sua sponte*, the question of whether all necessary parties were before the trial court pursuant to Tenn. Code Ann. § 29-14-107(a) and Tenn. R. Civ. P. 19. After concluding that all necessary parties were not included in this action, we vacate the judgment of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Roger A. Stone and Lisa N. Stanley, Memphis, Tennessee, for the appellant, Airways Commons, LLC.

Oscar C. Carr, III and R. Mathew Brinner, Memphis, Tennessee, for the appellee, Double Eagle Properties Holdings, LLC.

**OPINION**

# I. Background Facts & Procedure

Airways Commons, LLC ("Airways" or "Seller") owned a commercial office building located at 3385 Airways Boulevard, Memphis, Tennessee. Fixed atop the building is a cellular tower. On November 30, 2005, Airways entered into an agreement styled "Rooftop Lease and Assignment Agreement" ("Rooftop Agreement") with Unison Site Management, LLC ("Unison"). Unison was not made a party to this action; however, the Rooftop Agreement is the subject of much disagreement between the parties.

The Rooftop Agreement purported to lease to Unison the rooftop portion of the building for the use and maintenance of the cellular tower. In exchange, Unison paid Airways $135,000 as complete consideration upon the signing of the Rooftop Agreement. Contemporaneously with the signing of the Rooftop Agreement, Unison assigned its interest in the agreement to its wholly-owned subsidiary, Cell Tower Lease Acquisition, LLC ("Cell Tower"). This assignment was styled "Assignment of Easement" and was recorded with the Shelby County Register of Deeds. Cell Tower was also not made a party to this action.

On April 8, 2008, Double Eagle Properties Holdings, LLC ("Double Eagle" or "Buyer") entered into an agreement with Airways for the purchase and sale of the entire building. This agreement was styled "Commercial Purchase and Sale Agreement" ("Purchase Contract"). The Purchase Contract contained an assignment of leases provision under which Airways assigned and conveyed its interest as landlord in all leases on the building to Double Eagle. Under the terms of the Purchase Contract, Airways was required to submit to Double Eagle a complete and accurate rent roll describing the terms of all leases on the building. As a "Special Stipulation," Paragraph 17 of the Purchase Contract stated that "[p]urchaser understands that Cingular Wireless has a perpetual easement on the property relating to cell towers on the roof. No rent is provided to the owner. Cingular Wireless pays their own utilities of $500-$750.00/month."

After execution of the Purchase Contract, but before closing on the purchase and sale of the building, Double Eagle raised an issue with Airways as to whether the Rooftop Agreement between Airways and Unison was, in fact, a lease subject to the assignment of leases provision in the Purchase Contract. Double Eagle asserted that the Rooftop Agreement was, in fact, a lease and that the $135,000 Unison paid to Airways was prepaid rent that should be prorated under the Purchase Contract and paid to Double Eagle. Airways contended that the Rooftop Agreement was, in fact, an easement and not subject to the assignment of leases, and that the $135,000 was the purchase price paid by Unison for the easement.

As a condition to closing, which occurred on April 18, 2008, the parties agreed to escrow the disputed funds "until such time as a court of competent jurisdiction shall determine what amount, if any, received by Seller from Unison should be paid to Buyer pursuant to the terms of the [Purchase] Contract." On May 15, 2008, the escrow agent, attorney Michael Adler, filed a petition to interplead $135,000 in escrowed funds in the Chancery Court for Shelby County, naming as defendants, Double Eagle and Airways.[1] Double Eagle and Airways both filed answers and cross-claims against each other. Both cross-claims sought a declaratory judgment as to the proper allocation and distribution of the $135,000 received by Airways from Unison. Double Eagle sought a construction of both the Purchase Contract and the Rooftop Agreement, while Airways maintained that the dispute should be resolved by exclusive reference to the Purchase Contract.

On July 24, 2009, Double Eagle, as cross-complainant, filed a motion for summary judgment, memorandum of law, and statement of undisputed facts. On August 3, 2009, Airways likewise filed a motion for summary judgment, memorandum of law, and statement of undisputed facts. Both parties subsequently filed responses to these motions for summary judgment and statements of undisputed facts. Throughout these filings, much litigation focused on whether the Rooftop Agreement was a lease or an easement, as the parties apparently agreed that a determination of this issue would be dispositive of the declaratory judgment action.

The trial court held a summary judgment hearing on November 20, 2009. By order of March 3, 2010, the trial court granted summary judgment in favor of Double Eagle in the amount of $124,312.50 plus attorneys fees and expenses. In doing so, the trial court construed both the Purchase Contract and the Rooftop Agreement. The trial court determined, *inter alia*, that: (1) Paragraph 17 of the Purchase Contract was an incorrect statement upon which Double Eagle should have been able to rely; (2) the Rooftop Agreement was, in fact, a lease and not an easement; and (3) because the Rooftop Agreement was a lease and the Purchase Contract provided for the proration of rents, the $135,000 in dispute must be prorated as rent and paid to Double Eagle.

## II. Issues Presented

After entry of a final judgment, Airways filed a timely notice of appeal raising three issues for review, as stated in its brief:

___

[1]By consent order entered July 18, 2008, an amended petition to interplead funds was filed which allowed the escrow agent to deduct his attorneys fees and costs, such that the final total sum interplead amounted to $132,425.

(1) Whether the Court erred in holding that the Rooftop Lease and Assignment Agreement was a lease and not an easement despite language providing that the agreement may not be terminated by the site owner, language characterizing the consideration as the purchase price, and despite the fact that the assignment of the Rooftop Lease and Assignment Agreement is labeled "Assignment of Easement."

(2) Whether the Court erred in holding that despite viewing the cellular tower on the roof of the property prior to entering into the purchase contract, Double Eagle had no duty to exercise due diligence in researching the terms by which it would be bound under the agreement with the third party cellular tower owner.

(3) Whether the Court erred in awarding attorney fees to Appellee as the prevailing party should the judgment be overturned.

Additionally, Double Eagle has requested an award of attorneys fees and costs on appeal pursuant to the Purchase Contract.

### III. Analysis

Without reaching the issues raised by the parties, we must, *sua sponte*, question whether all necessary parties were included in this action for declaratory judgment. Tenn. R. App. P. 13(b) permits this Court discretion to consider issues not presented for review in order: "(1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." **Id.** We believe, for reasons more fully developed below, that review under Tenn. R. App. P. 13(b) is appropriate in this case.

Double Eagle and Airways seek declaratory relief pursuant to the Declaratory Judgments Act contained at Tenn. Code Ann. § 29-14-101 *et seq.* Specifically, Tenn. Code Ann. § 29-14-103 provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any

-4-

> question of construction or validity arising under the instrument,
> statute, ordinance, contract, or franchise and obtain a declaration
> of rights, status or other legal relations thereunder.

***Id.***

"Because of the nature of declaratory relief, the Declaratory Judgments Act makes it incumbent that every person having an affected interest be given notice and an opportunity to be heard before declaratory relief may be granted." ***Huntsville Util. Dist. of Scott County v. Gen. Trust Co.***, 839 S.W.2d 397, 403 (Tenn. Ct. App. 1992). Declaratory judgments are not available unless all the proper parties are before the court.[2] ***Byrn v. Metro. Bd. of Pub. Educ.***, No. 01-A-019003CV00124, 1991 WL 7806, at *5 (Tenn. Ct. App. Jan. 30, 1991) (citations omitted). "Proper parties include all those who must be bound by the decree in order to make it effective and to avoid the recurrence of additional litigation on the same subject." ***Id.***

Tennessee Code Annotated § 29-14-107(a) mandates that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."

"Identifying the necessary parties in a declaratory judgment action depends on the type of case and the issues involved." ***Byrn***, 1991 WL 7806, at *5. When construing a written contract, all contracting parties having a justiciable dispute are necessary parties. ***Id.*** (citing 1 W. Anderson, *Actions for Declaratory Judgments* § 137 (2d ed. 1951)). However, persons having only a remote, indirect interest in the subject matter of the suit need not be joined. ***Shelby County Bd. of Comm'rs v. Shelby County Quarterly Court***, 392 S.W.2d 935, 940 (Tenn. 1965); *see also* ***David v. Coal Creek Mining and Mfg. Co.***, 461 S.W.2d 29, 32 (Tenn. 1970). Tenn. Code Ann. § 29-14-107(a) "imposes stricter requirements than those imposed generally by Tennessee Rules of Civil Procedure 19.01 and 19.02." ***Huntsville Util. Dist. of Scott County***, 839 S.W.2d at 403. Thus, "non-joinder of necessary parties is fatal on the question of justiciability, which, in a suit for a declaratory judgment, is a necessary condition of judicial relief." ***Id.*** at 400 (citing ***Wright v. Nashville Gas & Heating Co.***, 194 S.W.2d 459, 461 (Tenn. 1946)); *see also* Henry R. Gibson, Gibson's Suits in Chancery § 44.16 (8th ed. 2004).

Both Airways and Double Eagle sought a declaratory judgment to determine which of the two was entitled to the disputed funds. As the litigation was framed below, an interpretation of the Purchase Contract between Double Eagle and Airways depended on an

---

[2]*See infra* note 4.

interpretation of the Rooftop Agreement between Airways and Unison. Among other theories, the parties contended that if the Rooftop Agreement was a lease, then Double Eagle was entitled to prorated rent under the assignment of leases provision of the Purchase Contract. On the other hand, if the Rooftop Agreement was an easement, then no additional rent was due to Double Eagle under the Purchase Contract and Airways could keep the $135,000 that it had previously received from Unison. The trial court considered both agreements before rendering its judgment. After doing so, the trial court determined that the property interest created in Unison and assigned to Cell Tower was a lease and not an easement. For the reasons discussed below, we conclude that this determination was made without having all of the necessary parties before the court.

A party to an agreement may be a necessary party to a declaratory judgment action construing that agreement.[3] The Tennessee Supreme Court has held that, in an action by a landowner to construe a lease, the original lessee and the assignee of the entire lease were necessary parties. *David v. Coal Creek Mining & Mfg. Co.*, 461 S.W.2d 29 (Tenn. 1970). The Court of Appeals has held that, where a public school teacher filed a declaratory judgment action to construe a collective bargaining agreement between the board of education and the teacher's union, all three were necessary parties before the court.[4] *Byrn v. Metro. Bd. of Pub. Educ.*, No. 01-A-019003CV00124, 1991 WL 7806, at *5-6 (Tenn. Ct. App. Jan. 30, 1991). We have noted elsewhere that, in a declaratory judgment action between two private security companies to interpret restrictive employment covenants, the employees who signed those covenants may be necessary parties. *Guardsmark, Inc. v. Borg-Warner Protective Servs.*, No. 02A01-9409-CH-00207, 1998 Tenn. App. LEXIS 743, at *36-39 (Tenn. Ct. App. Nov. 4, 1998). Likewise, where a taxpayer sought a judgment declaring the charter and franchise of a utility invalid, the municipality that awarded the franchise and charter was held to be a necessary and indispensable party. *Wright v. Nashville Gas & Heating Co.*, 194 S.W.2d 459, 460-61 (Tenn. 1946). This was so because an effectual or enforceable declaration could not be had without the municipality's presence. *Id*.

---

[3]Tenn. Code Ann. § 29-14-107 is based upon § 11 of the Uniform Declaratory Judgments Act. Other jurisdictions construing the Uniform Declaratory Judgments Act have determined that, in actions seeking the construction of a contract, the parties to the contract are necessary parties. *See Garnick v. Serewitch*, 121 A.2d 423, 430 (N.J. Super. Ct. Ch. Div. 1956) ("[a] contract may not be construed in the absence of a party thereto"); *Wells v. Bank of Nevada*, 522 P.2d 1014, 1017 (Nev. 1974) ("[c]ontroversies arising under an agreement properly are to be determined and settled by parties to the agreement or their assigns, that is, by those who have legal rights or duties thereunder.").

[4]We note that in *Byrn*, this Court applied the term "proper parties" to its holding. *See Byrn*, 1991 WL 7806, at *5-6. However, from our reading of *Byrn* and its cited authorities, we believe that the *Byrn* Court used the terms "proper parties" and "necessary parties" interchangeably.

Even without being a party to the agreement being construed, a party may be necessary if it claims an interest in the property that is the subject of litigation. *See Harrill v. Am. Home Mortgage Co.*, 32 S.W.2d 1023 (Tenn. 1930) (holding that trustee, who held title to property, and bank, which held notes under pledge to secure obligations of mortgage company, were necessary parties to declaratory judgment as to validity of mortgages); *In re Estate of Parrott v. Galyon*, No. 03A01-9402CH-00067, 1994 Tenn. App. LEXIS 412 (Tenn. Ct. App. July 29, 1994 (holding that devisees under will were necessary and indispensable parties in suit to construe will); *Robin Media Group, Inc. v. Seaton*, No. 03A01-9704-CH-00146, 1997 WL 760726, at *6 (Tenn. Ct. App. Dec. 11, 1997) (holding that owner of franchise and city granting franchise would be necessary parties to declaratory judgment action by third party seeking to construe franchise).

Most recently, in *Williams v. Hirsch*, we held that a client who entered a contingency fee agreement with multiple attorneys was an interested and necessary party to a declaratory action interpreting that agreement. *Williams v. Hirsch*, No. M2010-02407-COA-R9-CV, 2011 WL 303257 (Tenn. Ct. App. Jan 25, 2011). The plaintiff in *Williams* was pursuing a personal injury claim and agreed to a one-third contingency fee to be split between several attorneys. *Id*. at *1. One of the attorneys withdrew from representation and filed an attorney's lien claiming an interest in any recovery. *Id.* The plaintiff then filed a declaratory judgment action requesting that the court interpret the fee agreement. *Id.* A different attorney, who was also a party to the agreement, filed an intervening complaint for declaratory relief, and upon this later filing, the trial court dismissed the plaintiff. *Id.* We reversed, holding that the plaintiff was an interested person within the meaning of Tenn. Code Ann. § 29-14-103. *Id.* at *2. We did so despite the fact that the plaintiff would owe the same total attorney fee regardless of how the fee was divided. *Id.* While *Williams* specifically applied section 29-14-103, we noted that the result obtained because plaintiff's inclusion was necessary pursuant to section 29-14-107. *Id.* Otherwise, if the plaintiff were not a party to the declaratory judgment action, "any declaration by the trial court would not be binding on her." *Id.*

As noted above, identifying the necessary parties in a declaratory judgment action is fact intensive and depends on the type of case and issues involved. *Byrn*, 1991 WL 7806, at *5. In this case, the dispute between Double Eagle and Airways included not only the Purchase Contract to which they were parties, but also came to include the Rooftop Agreement between Airways and Unison, as assigned to Cell Tower. This fact alone would not necessitate the inclusion of Unison or Cell Tower as parties if their interests in the subject matter of this suit were indirect or remote. *Id.* (citing *Shelby County Bd. of Comm'rs v. Shelby County Quarterly Court*, 392 S.W.2d 935, 940 (Tenn. 1965)). However, Unison's interest, or at least that of its assignee, is not remote, but rather the very crux of the dispute

between Double Eagle and Airways. That is, the trial court's declaratory judgment determined the property interest created in Unison and assigned to its wholly-owned subsidiary, Cell Tower. We believe that it was error for the trial court to fail to include the holder of current contractual rights under the Rooftop Agreement in this declaratory judgment action.

We pause here to address the role, or lack thereof, of Cell Tower in this litigation. It is undisputed, but perhaps not fully developed in the appellate record, that, concurrent with signing the Rooftop Agreement, Unison assigned its interest in the agreement to Cell Tower. If this is the case, then Cell Tower, not Unison, is the entity with current contractual rights pursuant to the Rooftop Agreement. We refer to the case of **David v. Coal Creek Mining and Manufacturing Co.**, 461 S.W.2d 29, 32 (Tenn. 1970), for the proposition that, where a landowner seeks a declaratory judgment of a lease, the assignee of the lessee is a necessary party (excepting remote lessees). We cannot ascertain from the record whether Unison has any remaining interest in the Rooftop Agreement, but to the extent it does, it would also be a necessary party. The remaining discussion will largely focus on Cell Tower as the assignee and current holder of an interest in the Rooftop Agreement, with the caveat that we do not foreclose the possibility that Unison has sufficient remaining interests which could be affected and which would necessitate its inclusion in any declaratory judgment action.

The majority of the litigation in this case revolved around what property interest Airways and Unison intended to create by the Rooftop Agreement. Unison and Airways presumably structured the Rooftop Agreement to suit their particular purposes, which could be related to tax and liability concerns, management of the roof area, or operation of the cellular tower. When the trial court determined that the Rooftop Agreement created a lease, and not an easement, in addition to determining the legal property interest created in Unison and assigned to Cell Tower, it also implicitly determined the ongoing structure of the relationship of the parties to the Rooftop Agreement as one of landlord-tenant. The existence of a judgment to this effect would certainly affect the dynamic between Double Eagle and Cell Tower. Furthermore, because on any given issue the substantive law of easements and leases may differ, a later arising dispute between Cell Tower and Double Eagle would likely include a dispute as to which entities exactly were bound by the instant declaratory judgment.

Whether Cell Tower would be bound by the trial court's declaratory judgment in a later dispute construing the Rooftop Agreement was obviously not developed at trial and is far too speculative a topic for this Court to ruminate upon. However, notwithstanding language to the contrary in **Guardsmark**, we do not believe it necessary that Cell Tower be collaterally estopped in a later action for its interests to be affected in the instant action. *See* **Guardsmark, Inc. v. Borg-Warner Protective Servs.**, No. 02A01-9409-CH-00207, 1998 Tenn. App. LEXIS 743, at *36-39 (Tenn. Ct. App. Nov. 4, 1998) (remanding for

consideration of collateral estoppel issues). We believe that Cell Tower's interests were sufficiently affected by the judgment below regardless of whether collateral estoppel would bar later litigation of the Rooftop Agreement.

The Tennessee Rules of Civil Procedure further support our decision in this case.[5] As noted above, Tenn. Code Ann. § 29-14-107(a) imposes "stricter requirements than those imposed generally by Tennessee Rules of Civil Procedure 19.01 and 19.02." ***Huntsville Util. Dist. of Scott County***, 839 S.W.2d at 403. Nevertheless, the language of Rule 19.01 provides, in relevant part, that:

> A person . . . shall be joined as a party if . . . the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Tenn. R. Civ. P. 19.01

For the reasons discussed above, we believe that Cell Tower's absence from the declaratory judgment action below practically impeded its ability to protect its interest in the Rooftop Agreement and property interests created thereunder. Cell Tower's absence also exposed Airways and Double Eagle to a substantial risk of incurring multiple inconsistent obligations by the specter of future litigation construing the Rooftop Agreement by virtue of Cell Tower not being bound by the instant action.

We note that the necessity of Cell Tower's inclusion in the instant action stems from the trial court's construction, at the behest of the parties, of the Rooftop Agreement. Cell Tower would not be a necessary party to a declaratory judgment action construing only the Purchase Contract between Airways and Double Eagle. We state no opinion as to whether the parties' dispute can be resolved solely by reference to the agreement between them. However, where the trial court construes both documents, it necessarily passes judgment on the rights and obligations of Cell Tower, and, therefore, Cell Tower must be added as a party.

We also note that while a failure to add necessary parties is generally said to be fatal,

---

[5]Tenn. R. Civ. P. 57 provides that "[t]he procedure for obtaining a declaratory judgment pursuant to Tenn. Code Ann. § 29-14-107 et seq., shall be in accordance with these rules."

*Huntsville Util. Dist. of Scott County*, 839 S.W.2d at 400, in this case, where both parties have cross-claimed for declaratory judgment, we believe the interests of justice would not be served by dismissing the suit.

As a final matter, the Purchase Contract provided for attorneys fees and costs for the prevailing party in any ensuing litigation, and the parties have requested attorneys fees and costs on appeal. Because we vacate and remand, any resolution of attorneys fees and costs by this Court is premature.

## IV.  Conclusion

For the reasons discussed herein, we vacate the judgment of the trial court and remand for further proceedings consistent with this opinion. All other issues are pretermitted. Costs of this appeal are assessed one-half to Appellant, Airways Commons, LLC, and its surety, and one-half to Appellee, Double Eagle Properties Holdings, LLC, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE