IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2019

**SHIRLEY COLLINS ET AL. v. JOHN D. CARTER ET AL.**

**Appeal from the Circuit Court for Greene County**
**No. CC-16-CV-310  Alex E. Pearson, Judge**

———————————————————

**No. E2018-01365-COA-R3-CV**

———————————————————

Four family members sued their former employer and eight individual defendants after their employment was terminated amid allegations of malfeasance. The complaint alleged nine causes of action. The court dismissed the plaintiffs' claims against the former employer and six of the eight individual defendants on summary judgment. The plaintiffs and the remaining two defendants then became embroiled in an extended discovery battle. The battle ended with the trial court dismissing the remaining claims with prejudice based on the plaintiffs' failure to cooperate in discovery. We conclude that the trial court erred in granting summary judgment on the contract claims because the contract at issue was not ultra vires. Because we reverse that portion of the trial court's decision, we also reverse the award of attorney's fees under Tennessee Code Annotated § 29-20-113(a). We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jeffrey A. Greene, Franklin, Tennessee, for the appellants, Shirley Collins, Willie Collins, Bill Jennings, and Kandie Jennings.

Thomas L. Kilday and Thomas J. Garland, Jr., Greeneville, Tennessee, for the appellees, John D. Carter, Beth Ann Fletcher, Robert Tyson Lamb, Stephanie Faye Wallin, Vera Miranda Cox, and Chuckey Utility District.

S. Douglas Drinnon, Dandridge, Tennessee, and T. Wood Smith, Greeneville, Tennessee, for the appellee, David M. Ellis.

R. Wayne Culbertson, Kingsport, Tennessee, for the appellee, Jamie Lamb.

Edward L. Kershaw, Greeneville, Tennessee, pro se appellee.

**OPINION**

**I.**

**A.**

Shirley Collins served as general manager for Chuckey Utility District and Cross Anchor Utility District from 1986 until her retirement in 2012. The utility districts provided water services to customers in Greene and Washington Counties under a joint operating agreement. Other members of Ms. Collins's immediate family were also employed by the districts. When Ms. Collins retired, her daughter, Kandie Jennings, became the new general manager.

Ms. Collins and Chuckey Utility District executed a consulting contract to begin upon her retirement. The contract obligated Ms. Collins to provide assistance to the District, as needed, for two years. In exchange, the District agreed to pay her a fixed amount of monthly compensation, beginning in April 2013.

On October 2, 2013, John Carter, president of the Board of Commissioners of Chuckey Utility District, informed Ms. Jennings that a recent audit had uncovered possible malfeasance involving Ms. Jennings, her husband, and her parents. The governing boards of both districts had voted to summarily suspend the four family members with pay while the allegations were investigated. The family was asked to leave the premises immediately. And the audit findings were reported to the State Comptroller's Office.

The family adamantly maintained their innocence during the ensuing investigation. But in November, the two boards voted to change their employment status to leave without pay. And at some point, Shirley Collins's consulting contract and the at-will employment of the other three family members were terminated.

The Greene County Grand Jury also indicted Ms. Collins and Ms. Jennings on multiple felony counts. Before trial, the District Attorney General agreed to dismiss the majority of the criminal charges against both women in exchange for a best interest guilty plea by Ms. Collins. All criminal charges against Ms. Jennings were dismissed. Ms. Collins pled guilty to soliciting unlawful compensation and received judicial diversion. All other criminal charges against Ms. Collins were dismissed.

2

B.

In July 2016, Shirley Collins, Willie Collins, Kandie Jennings, and Bill Jennings sued. They named as defendants Chuckey Utility District; John Carter; David M. Ellis, auditor for the utility districts; Edward Kershaw, attorney for the districts; four employees of Chuckey Utility District; and one employee's wife. The complaint sought compensatory and punitive damages arising from nine causes of action, including civil conspiracy, malicious prosecution, defamation, false light invasion of privacy, negligent and intentional infliction of emotional distress, breach of contract, interference with contract, and interference with at-will employment.

We focus on four of the nine claims: malicious prosecution, breach of contract, interference with contract, and civil conspiracy. Ms. Collins and Ms. Jennings asserted malicious prosecution claims against the eight individual defendants. According to the complaint, the individual defendants provided false information that led the District Attorney General to file unwarranted criminal charges against the two women. Ms. Collins also asserted a breach of contract claim against Chuckey Utility District and a corresponding interference with contract claim against all the individual defendants based on the termination of her consulting contract. Finally, all four plaintiffs claimed the individual defendants engaged in a civil conspiracy to destroy the plaintiffs' reputations, terminate their employment and Ms. Collins's consulting agreement, and instigate an unwarranted criminal prosecution.

In their answers, the defendants denied liability and raised a number of affirmative defenses and counterclaims.[1] And they began to chip away at the multiple claims through a series of summary judgment motions. The trial court eventually granted summary judgment on the malicious prosecution claim. The court ruled that the criminal prosecution had not terminated in the plaintiffs' favor because the charges were dismissed as part of a joint settlement. The dismissal of the malicious prosecution claims applied to all individual defendants except Mr. Carter, who had not joined in the motion for summary judgment.

The District moved for summary judgment on the breach of contract claim, arguing that the consulting contract was ultra vires and unenforceable. While Mr. Carter may have signed the contract on behalf of the District, his signature had not been witnessed by another board officer, as required by the board's bylaws. The individual defendants, other than Mr. Carter, moved for summary judgment on the interference claim on this same basis. The trial court ruled that the missing attestation rendered the contract ultra vires and granted summary judgment on both claims.

---

[1] All counterclaims were later dismissed.

3

The court also dismissed the civil conspiracy claim against six individual defendants. The court ruled that the plaintiffs could not assert a claim for civil conspiracy in the absence of an underlying actionable tort and all other claims against the six defendants had been dismissed.

When the dust settled, two defendants remained—Mr. Carter and Mr. Ellis. Despite the grants of summary judgment, both men still faced multiple claims.

## C.

The focus of the litigation then shifted to discovery. Mr. Carter and Mr. Ellis served each plaintiff with a set of interrogatories and requests for production of documents in the spring of 2017. When the plaintiffs did not respond within the timeframe established by our rules of civil procedure, the defendants unilaterally offered to extend the deadline to late May. But the extended deadline came and went without any discovery responses from the plaintiffs.

The defendants cancelled the upcoming party depositions and filed separate motions to compel and for sanctions. The plaintiffs provided discovery responses on June 2, the day Mr. Ellis filed his motion to compel. But the defendants found the responses inadequate. Not only did the interrogatory responses consist mostly of "canned answers" but in response to the requests for production, the plaintiffs "dumped" a mountain of documents and other materials on the defendants, many of which appeared unresponsive to the requests.

The defendants promptly filed new motions to compel. At the hearing on this second set of motions, the parties were able to resolve some of their issues by agreement. But resolution over the "canned answers" and the "document dump" eluded them. After reviewing the discovery responses, the court agreed with the defendants and ordered the plaintiffs to supplement multiple interrogatory responses and to "specifically identify which documents or other items [we]re produced in response to which interrogatory or request for production" by August 4.

The defendants agreed to extend the court-ordered deadline to August 7. And the plaintiffs provided supplemental responses by the extended deadline. But the defendants were unimpressed with the plaintiffs' efforts. In his second motion for sanctions, Mr. Ellis complained that the supplemental responses contained the same "canned" responses as before. And while the plaintiffs "may have reduced the total undefined universe of documents described in Plaintiffs' original responses, this reduction remains akin to a galaxy of documents, . . . mostly . . . unrelated to the request[s]." Mr. Carter expressed his frustration that the plaintiffs had not fully answered his interrogatories. The plaintiffs maintained that Mr. Carter should be held liable for the tortious acts of co-conspirators not named as defendants. But they failed to identify these co-conspirators or

4

to provide any specific information about the co-conspirators' conduct. The party depositions, which had been rescheduled for August, were again postponed. And Mr. Carter and Mr. Ellis asked the court to dismiss the claims against them as a sanction for the plaintiffs' continuing failure to cooperate in discovery.

The court agreed that the supplemental responses fell short. In a September 13, 2017 order, the court directed the plaintiffs to provide either clear answers or specific objections to the interrogatories. With regard to the "document dump," the court directed counsel to meet and "confer in good faith" to resolve the dispute. And if the plaintiffs continued to provide nonresponsive documents, the court indicated it would consider monetary sanctions. But because the court did not view the plaintiffs' conduct thus far as willful disobedience, the court declined to grant the requested sanction of dismissal.

At the court-ordered meeting, the plaintiffs' counsel resisted all defense entreaties that he identify specific pages within the produced documents that were responsive to the discovery requests. Rather, he continued to insist that, as currently worded, the requests only obligated him to broadly identify the responsive documents. Given the apparent impasse, Mr. Ellis drafted a second set of document requests, asking the plaintiffs to identify specific pages. Mr. Carter also sent the plaintiffs a second set of re-worded interrogatories in an effort to resolve the dispute over the meaning of the first set.

The court's September order did not set a deadline for the plaintiffs to supplement their responses. In mid-October, having received no supplemental responses, the defendants renewed their requests for sanctions for discovery abuse. The motions were set for a hearing on November 14.

The plaintiffs served the defendants with supplemental responses to Mr. Carter's discovery on November 1. And on November 14, the plaintiffs' counsel filed a declaration in which he represented to the court that he could "commit . . . to having the responses [to Mr. Ellis's discovery] completed by Monday November 20, and likely by Friday November 17." His excuse for his tardiness was "the scheduling of [a] long-planned two-week vacation coupled with extraordinary and unforeseeable problems [at work] that required intense and immediate attention." But he assured the court that "the delays associated with completing the discovery should not affect the [April] trial date."

At the November 14 hearing, the plaintiffs' counsel explained that his supplemental responses to Mr. Ellis's first discovery requests were almost finished. And he stood by his representation to the court that the responses would be completed by November 20. He also apologized for overlooking Mr. Ellis's second set of requests. He anticipated that he could provide those responses fairly quickly. The court accepted counsel's representations that complete discovery responses were forthcoming and took the request for sanctions under advisement.

On November 29, Mr. Carter and Mr. Ellis notified the court that no additional discovery responses had been received. On December 3, Mr. Ellis received Ms. Collins's supplemental responses to his first set of discovery. And the plaintiffs' counsel notified the court by letter that he expected to complete the supplemental responses of the remaining plaintiffs by the end of the week. By December 15, the defendants had not received the promised responses. So they apprised the court of the latest missed deadline.

In an order dated January 12, 2018, the court found that the plaintiffs had failed to fully comply with its previous discovery orders. The court also found that the plaintiffs were given ample time to respond to the requests and had "engaged in unacceptable discovery practices that have impacted the speedy progress of this lawsuit." The discovery delays "have impacted the defendants' ability to prepare for the upcoming trial." But the court declined to dismiss the action based on the plaintiffs' counsel's representations on November 14 that his other commitments "will no longer serve as an impediment to the progress of this case." Instead, the court awarded monetary sanctions.

Dissatisfied, the defendants asked the court to reconsider. They pointed out that the plaintiffs had still not answered Mr. Ellis's second set of discovery requests, which had been outstanding since September.

On March 2, the defendants' motion to reconsider came on for hearing. After considering the argument from counsel and the record as a whole, the court dismissed with prejudice all remaining claims against Mr. Carter and Mr. Ellis based on the plaintiffs' repeated discovery abuses. The court noted that the plaintiffs missed multiple discovery deadlines forcing the defendants to file repeated motions. The court found that this dispute was more than a misunderstanding regarding the scope of discovery. The plaintiffs had repeatedly failed to comply with the rules of civil procedure and the court's orders. As of March 2, the plaintiffs had made no effort to answer discovery that had been outstanding since September. The plaintiffs had never asked the court for additional time to respond or for a protective order. The court found "no justification for this many issues over discovery." While the court had tried to accommodate the plaintiffs' counsel's busy schedule, "these discovery abuses have continued far too long."

**II.**

The plaintiffs seek review of various rulings of the trial court. Ms. Jennings appeals the dismissal of her claims against the individual defendants for malicious prosecution and civil conspiracy. Ms. Collins appeals the dismissal of her claim against the District for breach of contract and her claims against the individual defendants for interference with contract and civil conspiracy. And all the plaintiffs appeal the dismissal of their claims against Mr. Carter and Mr. Ellis as a discovery sanction.

6

A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

Here, the parties moving for summary judgment do not bear the burden of proof at trial. Thus, the burden of production on summary judgment could be satisfied "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

1. Malicious Prosecution

Ms. Jennings appeals the court's dismissal of her malicious prosecution claim. A plaintiff asserting malicious prosecution must prove: "(1) a prior suit or judicial

proceeding was brought against [her] without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in favor of plaintiff." *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992). The defendants contend that Ms. Jennings cannot establish the third element: favorable termination of the prior action.

The favorable termination element presents a mixed question of law and fact. *Sewell v. Par Cable, Inc.*, No. 87-266-II, 1988 WL 112915, at *2 (Tenn. Ct. App. Oct. 26, 1988) (citing RESTATEMENT (SECOND) OF TORTS § 673(1)(b), (2)(c) (AM. LAW INST. 1977)). Whether the prior action was terminated favorably to the plaintiff is a question of law for the court to decide. *Id.* But the circumstances under which the prior action terminated remains a question of fact. *Id.*

While an acquittal is clearly a favorable outcome, something less will support a malicious prosecution action. *Meeks v. Gasaway*, No. M2012-02083-COA-R3-CV, 2013 WL 6908942, at *4 (Tenn. Ct. App. Dec. 30, 2013). Our courts have accepted a prosecutor's entry of a nolle prosequi and a grand jury's refusal to indict as favorable terminations. *See Scheibler v. Steinburg*, 167 S.W. 866, 866-67 (Tenn. 1914); *Perry v. Sharber*, 803 S.W.2d 223, 225 (Tenn. Ct. App. 1990). A favorable termination should allow an inference that the accused was innocent of wrongdoing. *See Christian*, 833 S.W.2d at 74 ("The 'favorable' component is required because a judgment in favor of the original plaintiff is conclusive of probable cause, unless procured by fraud."); *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled on other grounds by Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012) (noting a favorable termination "tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort"); *see also* RESTATEMENT (SECOND) OF TORTS § 660 cmt. a (AM. LAW INST. 1977) (noting that a criminal action is only terminated in favor of the accused when the "final disposition is such as to indicate the innocence of the accused").

But dismissal of criminal charges as part of a settlement agreement is not a favorable termination for purposes of a malicious prosecution action. *Christian*, 833 S.W.2d at 74; *Landers v. Kroger Co.*, 539 S.W.2d 130, 133 (Tenn. Ct. App. 1976). "[T]he fact of compromise indicates that the question of . . . guilt or innocence is left open." RESTATEMENT (SECOND) OF TORTS § 660 cmt. c.

Ms. Jennings argues that the trial court erred in granting summary judgment on her malicious prosecution claim because the charges against her were abandoned by the prosecutor, not dismissed as part of a settlement agreement. We disagree. The defendants submitted proof, through the declaration of District Attorney General Dan Armstrong, that the charges against Ms. Jennings were dismissed as part of a joint settlement agreement. The fact that Ms. Jennings did not sign the plea agreement is not dispositive. The written plea agreement between Ms. Collins and the State included as a

8

condition of settlement the dismissal of all charges against Ms. Jennings. And we conclude that her criminal defense attorney's declaration fails to create a genuine fact dispute as to the circumstances under which the charges were dismissed. Ms. Jennings's attorney participated in settlement negotiations on her behalf. His subjective belief that Ms. Jennings would have prevailed in the criminal proceedings and his insistence during settlement negotiations that all charges against his client be dismissed are immaterial to the issue on summary judgment.

Ms. Jennings failed to create a genuine issue of material fact as to the circumstances under which the criminal prosecution against her terminated. The charges were dismissed as part of a joint settlement agreement. No inference can be made that Ms. Jennings was innocent of wrongdoing. The trial court did not err in ruling that dismissal under these circumstances was not a favorable termination.

2. Contract Claims

Ms. Collins appeals the dismissal of her claims based on the termination of her consulting contract. An enforceable contract is an essential element of both a cause of action for breach of contract and for tortious interference with contract. *See ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 29 (Tenn. Ct. App. 1992). Ms. Collins contends that the trial court erred in ruling that her consulting contract with the District was ultra vires and thus, unenforceable.

Chuckey Utility District is a municipal corporation. *See* Tenn. Code Ann. § 7-82-301(a)(1)(A) (Supp. 2019); *United Cities Gas Co. v. Wigington*, 815 S.W.2d 506, 509 (Tenn. 1991).

> Under Tennessee law, a municipal action may be declared ultra vires for either of two reasons: (1) because the action was wholly outside the scope of the city's authority under its charter or a statute, or (2) because the action was not undertaken consistent with the mandatory provisions of its charter or a statute.

*City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn. 1988). Undisputedly, the District had the power to enter into the consulting contract. *See* Tenn. Code Ann. § 7-82-304(a)(4) (Supp. 2019). So our focus is on the second prong or how the District exercised its power to contract. *See City of Lebanon*, 756 S.W.2d at 241 (noting that "the law recognizes a difference between the existence of a municipal power and the manner or mode of exercising municipal power legitimately").

The Utility District Law of 1937 governs the formation and operation of public utility districts. *See* Tenn. Code Ann. § 7-82-201 (2015); *Am. Heritage Apartments, Inc.*

9

*v. Hamilton Cty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 41 (Tenn. 2016). All public utility districts have the power to "[m]ake and enter into contracts." Tenn. Code Ann. § 7-82-304(a)(4). How is that power to be exercised? A public utility district acts through its board of commissioners. *See id.* § 7-82-301(a)(1)(A) (providing that district powers are "vested in and exercised by a majority of the members of the board of commissioners"). The board of commissioners may exercise the general and specific powers of a public utility district "by vote, ordinance or resolution." *Id.* § 7-82-309(a)(1) (Supp. 2019). The board may also delegate any of its powers to "one (1) or more of its members." *Id.* § 7-82-308(b) (Supp. 2019).

Here, Mr. Carter, President of Chuckey Utility District's Board, executed the consulting contract. The District does not argue that Mr. Carter lacked authority to execute the contract on its behalf. Rather, it contends that Mr. Carter's signature was not attested to by the Board Secretary, as required by the Board's bylaws. *See id.* § 7-82-309(a)(2) (authorizing the board to make bylaws). The Board's bylaws required all contracts to "be signed by the President or the Secretary of the Board and attested by the Secretary if signed by the President and attested by the Treasurer if signed by the Secretary." The contract here lacked the required attestation.

But Ms. Collins counters that the Board's permissive authority to enact bylaws did not limit the manner in which the District could legitimately exercise its power to contract. Bylaws may be waived. 8 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corps.* § 4200, Westlaw (database updated Sept. 2019). According to Ms. Collins, during her extensive tenure with the District, the Board routinely waived the attestation requirement. In her experience, attestation was only necessary for real estate and banking transactions.

Citing another provision of the Utility District Law, the District maintains that the District's power to contract is limited by a "'mandatory provision' of a statute that requires a contract to be executed in the manner directed by the board, which in this case is set forth in the CUD's Bylaws." *See* Tenn. Code Ann. § 7-82-309(a)(4). But the District's reliance on this statutory provision is misplaced. The Utility District Law gives the board of commissioners of a public utility district the power and authority to: "[l]ease, purchase, sell, convey and mortgage the property of the district and to execute all instruments, contracts, mortgages, deeds or bonds on behalf of the district in such manner as the board shall direct." *Id.* This provision does not restrict the manner in which the District can exercise its power to contract. It merely authorizes the Board to execute whatever documents are necessary to carry out its decision to "lease, purchase, sell, convey, [or] mortgage" district property. And even if we were to accept the District's argument, this section does not restrict the Board's ability to waive its own bylaws.

We conclude that Ms. Collins has the better part of this argument. Mr. Carter had the authority to execute the consulting contract. The attestation requirement was not

10

mandated by statute. And whether the attestation requirement was waived here is disputed. The missing attestation does not make the contract ultra vires. The trial court erred in granting summary judgment to the defendants on this basis.

Our conclusion on the enforceability of the contract means that a predicate tort, namely tortious interference with contract, remains pending. *See Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007) (holding that a civil conspiracy claim cannot stand in the absence of an underlying predicate tort). So the trial court erred in dismissing Ms. Collins's civil conspiracy claim on that basis.

B.

We next consider the plaintiffs' argument that the trial court erred in dismissing with prejudice their claims against Mr. Carter and Mr. Ellis as a discovery sanction. Trial courts have broad inherent authority to control proceedings in their courts. *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). When warranted, a trial court may dismiss an action for failure to comply with procedural rules or the orders of the court. Tenn. R. Civ. P. 37.02(C), 41.02(1). Dismissal is a harsh yet necessary sanction in appropriate circumstances. *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). But the power to dismiss must be exercised with restraint because "[t]he interests of justice are best served when lawsuits are resolved on their merits." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009) (quoting *Orten v. Orten*, 185 S.W.3d 825, 836 (Tenn. Ct. App. 2005) (Lee, J., dissenting)).

We review a trial court's decision to impose discovery sanctions for an abuse of discretion. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and . . . the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

The trial court dismissed the plaintiffs' case based on their repeated failure to comply with discovery deadlines and the court's discovery orders. On appeal, the plaintiffs challenge the court's finding that they failed to comply with its discovery orders. This record simply does not support their argument. We recognize that they

11

made some attempt to comply with the court's orders, but they never fully and completely answered the discovery requests, as ordered by the court. *See* Tenn. R. Civ. P. 37.01(3) (providing that evasive or incomplete answers may be treated as a failure to answer).

The plaintiffs also contend that dismissal was too harsh a sanction when the failure to comply with discovery was due to plaintiffs' counsel, not the parties themselves. *See Mills v. Bank of Roane Cty.*, No. 176, 1991 WL 126553, at *2 (Tenn. Ct. App. July 15, 1991). But we have affirmed dismissals when the misconduct was attributable to counsel. *See, e.g.*, *Gordon v. Wilson*, No. 02A01-9611-CV-00282, 1998 WL 315940, at *6 (Tenn. Ct. App. June 17, 1998); *Nokes v. Hooper*, No. 89-00-II, 1989 WL 115186, at *4 (Tenn. Ct. App. Oct. 4 1989); *Ratliff Dev. Corp. v. Brooks*, No. C.A. 144, 1988 WL 116455, at *4 (Tenn. Ct. App. Nov. 2, 1988); *Holt*, 638 S.W.2d at 394.

Whether dismissal was an appropriate sanction under the circumstances is determined on a case by case basis. *Murray v. Christian Methodist Episcopal Church*, 153 S.W.3d 371, 378 (Tenn. Ct. App. 2004). And we will affirm the trial court's decision to dismiss a case when there is a "clear record of delay or contumacious conduct." *Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998) (quoting *In re Beckman*, 78 B.R. 516, 518 (M.D. Tenn. 1987)). Here, the parties have been embroiled in discovery disputes for nine months. Forward progress in this case has been stalled since March 2017. The plaintiffs' inadequate responses have forced the party depositions to be cancelled twice and hampered the defendants' ability to prepare for the upcoming trial. Even so, the trial court initially refrained from dismissing this case, choosing instead to accept the representations of the plaintiffs' counsel that his other commitments would no longer impede the progress of the litigation. Despite this reprieve, there was no attempt to answer the outstanding discovery. And no excuses were offered. *Cf. Howard v. Am. Indus. Servs., Inc.*, No. M2001-02711-COA-R3-CV, 2002 WL 31769115, at *4 (Tenn. Ct. App. Dec. 11, 2002) (affirming dismissal after plaintiffs failed to properly respond to contention interrogatories or identify the specific documents that supported their claims "after almost a year and repeated orders to comply").

We conclude that the trial court's dismissal of the plaintiffs' action was not an abuse of discretion.[2] The court identified and applied the correct law. The evidence in the record supports the factual basis for its decision. The plaintiffs' failure to properly respond to discovery requests unduly prolonged discovery and halted forward progress in the litigation. Clearly, sanctions were appropriate here. And the court's choice of dismissal as the appropriate sanction was within the range of acceptable dispositions.

---

[2] We are not persuaded by the argument of the other defendants that the trial court's dismissal of the plaintiffs' claims against Mr. Carter and Mr. Ellis should also apply to them. The other defendants did not propound any discovery requests and were unaffected by the plaintiffs' conduct.

C.

Finally, the plaintiffs ask this court to reverse the trial court's award of attorney's fees to some of the defendants. After the trial court had dismissed the claims against Mr. Carter and Mr. Ellis, the District, Mr. Carter, and four other defendants employed by the District requested an award of reasonable attorney's fees and costs as prevailing parties under Tennessee Code Annotated § 29-20-113(a) (Supp. 2019).[3] The court found that the five employee-defendants were sued in their individual capacities for actions taken in their official capacities on behalf of the District. And they were prevailing parties, within the meaning of the statute, because they successfully defended the claims against them.

Because we reversed the trial court's grant of summary judgment on the claims for tortious interference with contract and civil conspiracy, the employee-defendants other than Mr. Carter are no longer prevailing parties. So we reverse the award of attorney's fees and remand to the trial court for determination of the amount of attorney's fees attributable to Mr. Carter's defense.

**III.**

The trial court properly granted summary judgment on the malicious prosecution claim. The plaintiffs could not establish a favorable termination of the criminal prosecution. But the trial court erred in granting summary judgment on the claims of Ms. Collins for breach of contract and tortious interference with contract. The consulting contract between Ms. Collins and Chuckey Utility District was not ultra vires. Because the underlying tort of tortious interference with contract remains pending, we reverse the dismissal of Ms. Collins's civil conspiracy claim against the individual defendants other than Mr. Carter and Mr. Ellis. The trial court did not abuse its discretion in dismissing all claims against Mr. Carter and Mr. Ellis based on the plaintiffs' repeated failure to cooperate in discovery. Finally, we reverse the trial court's award of attorney's fees

---

[3] The statute provides:

Notwithstanding § 20-12-119(c)(5)(A), if a claim is filed with a Tennessee . . . court . . . against an employee of the state or of a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee.

Tenn. Code Ann. § 29-20-113(a).

under Tennessee Code Annotated § 29-20-113(a).  We remand the case for such further proceedings as may be necessary in light of this opinion.

_____

W. NEAL MCBRAYER, JUDGE