FILED
04/24/2025
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 8, 2025 Session

## MARILEE Z. HURLEY, TRUSTEE OF THE MARILEE Z. HURLEY REVOCABLE TRUST DATED SEPTEMBER 26, 2008 v. GREEN SHADOWS HOMEOWNERS ASSOCIATION, INC.

**Appeal from the Chancery Court for Shelby County**
**No. CH-22-0933      JoeDae L. Jenkins, Chancellor**

_____

### No. W2024-00556-COA-R3-CV
_____

This case involves a dispute between a property owner and her homeowners' association. Appellant's property is governed by the homeowner's association's covenants, conditions, and restrictions. There are two improvements to appellant's property, a main house and a carriage house, both of which were originally roofed with vintage concrete tiles. Appellant replaced the roof on the carriage house with asphalt shingles, but did not replace the roof on the main house. Rather, appellant had the main house roof cleaned, which resulted in a lighter appearance. The homeowners' association demanded that appellant replace the main house roof with shingles to match the carriage house. Appellant refused and filed an action for declaratory judgment and injunction. The association filed a counter-complaint alleging that appellant was in breach of certain provisions of the covenants, conditions, and restrictions. The parties filed cross-motions for summary judgment. The trial court dismissed appellant's declaratory judgment action on its finding that it lacked subject-matter jurisdiction because appellant failed to join all necessary parties. The trial court granted the homeowners' association's motion for summary judgment on its counter-complaint and awarded attorney's fees. Because the trial court's order does not adequately explain its reasons for dismissing appellant's declaratory judgment action, we cannot conduct a meaningful review of that holding, and we vacate the trial court's dismissal of appellant's complaint. There are disputes of material fact that preclude the grant of summary judgment. Accordingly, we reverse the trial court's grant of summary judgment and its award of attorney's fees to the homeowner's association.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated in Part; Reversed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

Webb A. Brewer, Memphis, Tennessee, for the appellant, Marilee Z. Hurley.

Peter D. Baskind, Memphis, Tennessee, for the appellee, Green Shadows Homeowners Association, Inc.

**OPINION**

## I. Background

In September 1989, Appellant Marilee Hurley and her late husband purchased property at 6562 Green Shadows Lane in Memphis (the "Property"). The Property is of some historic note. According to Mrs. Hurley's complaint:

> 7. The Property is commonly known as the Pauline Cheek Barton House.
> 8. The Main House was built in 1938 by prominent Memphis architect Walk Claridge Jones, Sr. and is of the Colonial Revival architectural style.
> 9. It remained in the Barton family for more than fifty years until it was sold to Boyle Investments in 1989 . . . .
> 10. Attesting to the historical significance of the Property, it was nominated for placement on the National Register of Historic Places by the Tennessee Historical Commission.
> 11. On September 7, 1995, six years after the Hurleys' acquisition of the Property, it was placed on the National Register of Historic Places by the National Park Service of the United States Department of the Interior.

In 1989, Boyle Investments established the Green Shadows Development, and the Hurley Property was initially the only home in the development. It is undisputed that the Property is governed by the Appellee Green Shadows Homeowners Association, Inc. (the "HOA") and specifically by the "Green Shadows Declaration of Covenants, Conditions, and Restrictions" (the "CCR").

In 2008, the Hurleys transferred their interests in the Property to revocable trusts established in their respective names. The Property has two improvements — a main residence (the "Main House"), and a smaller residential outbuilding behind the main residence (the "Carriage House"). The Property is unique to the neighborhood. As relevant here, both the Main House and the Carriage House were originally roofed with vintage concrete tiles. Other than the two buildings on Mrs. Hurley's Property, no other buildings in the development have this type of roof.

In 2018, Mrs. Hurley engaged a contractor, Bill Day, to evaluate the Property for needed repairs due primarily to drainage issues and water damage. Mr. Day concluded that the concrete tile roofs on both the Main House and the Carriage House needed to be replaced. According to the HOA's statement of undisputed facts in support of its motion

for summary judgment, in October 2018, Mr. Day sent an email to Richard Fisher, a member of the Green Shadows Architecture Committee ("ARC"). Mr. Day attached a "redlined" draft of the renovation plans to this email, *see discussion infra*.

Because Mrs. Hurley was not satisfied that the drainage issues causing the Carriage House damage had been resolved, she claims that she abandoned the plans drawn by Mr. Day and engaged a roofing company to inspect the Carriage House and Main House. Exhibit F to Mrs. Hurley's complaint is a photograph of an "Inspection Report," which is signed by Mr. Bryan Bridges of Excellent Roofing. In the report, dated November 5, 2019, Mr. Bridges explains that he inspected the Main House roof and found that

> [t]he existing roof system [is the] original concrete tile roof system. There are no active leaks on the sloped tile roof. The tiles are all intact and appear to be in great condition. "It is not unreasonable to expect 100 years from a properly maintained concrete roof." State Roof Central. All copper flashing is in great condition and is flashed properly.
>
> In closing, the existing roof system should not be replaced, and has more years of serviceable life.

According to her complaint, in 2020, Mrs. Hurley hired another contractor "to create a scaled back plan, focused exclusively on resolving the stormwater drainage problem and salvaging and restoring the Carriage House." The complaint goes on to state that, on November 18, 2020, Mrs. Hurley "submitted her scaled back plan in an email to Rita Allen of the Green Shadows [HOA]," stating, in relevant part, that:

> We are trying to get a pick for the shingles we will be using to replicate what the shingles look like now. As soon as we have the shingles picked out I will send you the spec. In essence the back house will look the same as it currently looks.

As discussed below, Mrs. Hurley asserts that the foregoing is in reference to the Carriage House roof and "there is nothing in the email . . . that proposes that the roof of the Main House would be replaced . . . ."

Mrs. Hurley proceeded with construction on the Carriage House, including installation of a new asphalt shingle roof. Concerning the roof on the Main House, in his affidavit, Mr. Fisher states that "[i]n the Fall of 2020, [Mrs.] Hurley sought permission to clean a small sample portion of the roof on the Main House." Mr. Fisher does not elaborate on how Mrs. Hurley "sought permission" from the HOA, and there is no correspondence in the record addressing any request for roof cleaning. Nonetheless, it is undisputed that Mrs. Hurley hired a roof cleaning company to clean the roof of the Main House, which was covered in an accumulation of sediment and moss. Although the parties dispute whether

Mrs. Hurley had permission to clean only a "sample portion of the roof," it is undisputed that the entire Main House roof was cleaned. The cleaning resulted in the Main House roof appearing lighter in color.

On October 13, 2021, Mrs. Hurley responded to some maintenance concerns raised by the HOA with an email to Ms. Allen. Therein, Mrs. Hurley stated that, "The roof [of the Main House] has been cleaned and will remain as is." By letter of October 26, 2021, the HOA informed Mrs. Hurley that she had breached certain sections of the CCR, and asserted that:

> The [Main House] roof must be replaced with new shingles identical in make and appearance to those currently existing on the Carriage House. Any proposed modifications to the design or placement o[f] roof pipes, vents, gables or the like require submission to the ARC for approval. . . .

Mrs. Hurley did not replace the Main House roof. After the HOA sent several more demands and levied fines against Mrs. Hurley, on January 20, 2022, she responded in writing to Joyce Spiecha, Senior HOA Manager, stating:

> You have requested that the roof of the Main House be replaced. I respectfully decline to replace the roof of the Main House. My home has had the same concrete tile, permanent roof since before there was a Green Shadows Neighborhood Association, and it therefore cannot logically be incompatible "with the appearances and conditions of roofs of other houses in the Neighborhood." The roof contributes greatly to the historical character of my home and is part of why my home is on the National Historic Register (since 1995). Further, my roof has been inspected by a qualified roofing contractor and was found to be in water tight condition. I had the right to clean my roof without asking for any permission. Neither the Board nor the ARC has the authority to demand that I replace a functioning roof in order for it to "match" other roofs in the neighborhood or to "match' the Carriage House. . . .

In response to her correspondence, the HOA's attorney sent a letter to Mrs. Hurley. The letter, which is dated February 18, 2022, states, in relevant part:

> We have been asked by the Association to contact you regarding an ongoing issue involving the Property, namely, your failure to properly maintain the roof of the main house. Failing to maintain the exterior of the Property is a violation of [] certain [sections of the] Green Shadows [CCR]. . . .
>
> Paragraph 16 of the [CCR] provides in pertinent part that:

- 4 -

Whether or not specifically stated in any conveyance of a lot, the owner or occupant of each and every lot, by acceptance of title or by taking possession, covenants and agrees that no improvement or change, including, but not limited to, the construction, alteration, or erection of any structure, terrain change, fence, driveway, walkway, landscape screening, mailbox, outdoor lighting fixture, any sanitary and/or storm sewer system, underground wiring, swimming pool, pool deck, or the removal of any existing tree or trees which are six inches (two inches for cedars) in caliper or larger . . . shall be commenced, erected, placed or permitted on any lot until the plans, specifications and specific location (including elevation) of said improvement or change has been approved in writing, or the requirement for such approval has been waived in writing by the [ARC].

The [CCR] requires that you seek and receive approval (in writing) prior to making any alterations to the improvements on the Property. This restrictive covenant applies to the [M]ain [H]ouse and the [Carriage] [H]ouse on the Property.

The Association asked you on multiple occasions over the last few years to perform maintenance on the Property, including repairs to the roof of the [M]ain [H]ouse and the [Carriage] [H]ouse. In 2020, you finally agreed to make the necessary repairs and perform the necessary maintenance at the property. You communicated your intentions to the Board of Directors for the Association and you were informed that these exterior alterations needed to be submitted in writing for the Association to review. Unfortunately, you never submitted any proposed changes in writing. However, you did instruct your contractor to communicate with the Board of Directors regarding the desired changes. Your contractor spoke with Rita Allen on several occasions but never submitted any plans in writing.

In November 2020, your contractor informed the Board of Directors of the nature of the services being provided, including the color and style of the shingles that were going to be used on the [M]ain [H]ouse and the [Carriage] [H]ouse. Your contractor specifically stated that the [Carriage] [H]ouse would be completed first and then the same shingles were to be used on the [Main House] in order to ensure a harmonious look between the two properties. The Board relied on this representation to allow commencement on the [Carriage] [H]ouse. An estimate/invoice, which was signed by you and your contractor, was provided to Rita Allen via email outlining the nature of the work to be performed. The Board of Directors approved the proposed

alteration on the condition that the shingles on the [Main House] and the [Carriage] [H]ouse matched. Unfortunately, you only had the [Carriage] [H]ouse roof replaced, despite the conditional approval and the requirement to replace both. Your failure to replace the roof of the [Main House] is a violation of the [CCR].

Furthermore, you recently had the roof of the [Main House] pressure washed. The pressure washing substantially changed the appearance of the roof, again in violation of the CCR. Paragraph 18 of the [CCR] provides in relevant part that:

> Each owner shall be responsible for the maintenance and painting of all improvements to the land within his lot . . . .
>
> In the event the owner of any lot shall fail to maintain the premises and the improvements situated thereon in a manner reasonably satisfactory to the [ARC], and in keeping with other lots, the [Arc] shall have the right, through its agent or employees, to enter upon said parcel and to repair, maintain, and restore the lot and building improvements and any other improvements erected thereon. The cost of said maintenance shall be a binding obligation of the owner as well as a lien on the lot in question. . . . In addition to the costs as set forth herein, the owner shall be responsible for all court costs, reasonable attorneys' fees, and interest from the date of any expenditure at the maximum legal rate of interest.

The current appearance of the roof is not compatible with the standards for Green Shadows. The Association has provided you notice of this issue on multiple occasions. Unfortunately, you have failed to resolve this violation.

In summary, the current roof on the primary residence must be replaced for multiple reasons.

The letter states that the "Board/ARC is willing to meet with you on March 3 . . . ." Mrs. Hurley claims that when she informed the HOA that her attorney would be attending the meeting, but she would not, the HOA abruptly cancelled it.

On July 1, 2022, Mrs. Hurley filed a petition for declaratory and injunctive relief in the Chancery Court of Shelby County ("trial court"). In her petition, which was brought under the Tennessee Declaratory Judgments Act, Tennessee Code Annotated sections 29-14-101, *et seq.* (the "DJA"), Mrs. Hurley asked, *inter alia*, that
the Court issue a Declaratory Judgment that the [HOA], its employees,

- 6 -

agents, successors and/or assigns have no right to force [Mrs. Hurley] or her agents, successors and assigns to replace the original concrete tile roof pursuant to the [CCR] or take any other punitive action against Mrs. Hurley, her agents, successors and assigns, in connection with the circumstances and events set forth in this Petition.

On August 2, 2022, the HOA filed an answer to the petition, wherein it asserted that Mrs. Hurley was not entitled to the relief she sought. The HOA further asserted that Mrs. Hurley's declaratory judgment action should be dismissed for failure to join all necessary parties pursuant to section 29-14-107 of the DJA, *discussed infra*. Concurrent with its answer, the HOA filed a counter-complaint for injunctive relief and damages. The HOA reasserted the allegations contain in the February 18, 2022 letter sent to Mrs. Hurley by the HOA's attorney, *supra*, and claimed that she was in breach of the CCR for failure to replace the roof on the Main House. The HOA asked the trial court for both an order requiring Mrs. Hurley to perform her contractual obligations by "bringing her property into compliance," and an order allowing it to access Mrs. Hurley's property and to itself secure such "compliance" at her expense. The HOA also asked the trial court to enter a monetary judgment against Mrs. Hurley for fines it had purported to impose, along with its attorney's fees pursuant to Paragraph 27 of the CCR, which states in pertinent part:

> [I]n connection with enforcement of these Covenants . . . an action may be maintained at law or equity . . . to mandate compliance with the Covenants . . . and to recover damages including plaintiff's reasonable attorney's fees for failure to pay such expenses or for violation of any of these Covenants . . . .

On August 19, 2022, the HOA moved for summary judgment, arguing that it was entitled to summary judgment on its breach of contract claims because Mrs. Hurley had violated the CCR when she cleaned her roof, thereby changing its color, without the HOA's approval. Specifically, the motion states:

> 4. Once work on the Carriage House was completed, the roof of the Main House was power washed or otherwise deep cleaned, radically changing the color of the roof. What had been a darker-colored roof has become very light, and uneven. The color change is unacceptable to the Association. The change was made without the written permission of the Association. That is a violation of the [CCR].
>
> ***
>
> 6. Ms. Hurley is not entitled to the Declaratory relief she requests. Ms. Hurley may have failed to include necessary parties to the Declaratory action, which might deprive the Court of subject-matter jurisdiction.

8. The Association's Counter-complaint seeks to require Ms. Hurley to bring her Property into compliance with the Declaration by changing the Main House roof into a color approved by the Association.  There is no dispute that the Declaration requires permission in writing before a color change is made and that Ms. Hurley failed to obtain such permission.

On October 9, 2023, Mrs. Hurley filed a cross-motion for summary judgment, asking the trial court to find that she had not breached the CCR because it did not require her to obtain the HOA's approval before cleaning her roof. She further argued that the HOA lacked authority to compel her to replace the roof or to impose fines, and that the HOA's unreasonable attempts to do so violated the covenant of good faith and fair dealing. She maintained that the trial court had subject-matter jurisdiction over her declaratory judgment action because the HOA had not identified any absent party with an actual stake in the relief she was requesting. Finally, she asked the trial court to deny the HOA's request for attorney's fees.

On January 12, 2024, the HOA filed a response in opposition to Mrs. Hurley's motion for summary judgment. Therein, the HOA abandoned its previous suggestion that the Tennessee Historical Commission, the National Park Service, and an unnamed neighbor were necessary parties. Instead, the HOA asserted that, under the holding in *Brock v. Eick*, No. E2023-00021-COA-R3-CV, 2023 WL 7102336 (Tenn. Ct. App. Oct. 27, 2023), Mrs. Hurley would have to join every lot owner within the HOA before the trial court could exercise subject-matter jurisdiction over her petition.

On January 25, 2024, the trial court heard the competing summary-judgment motions. By order of February 9, 2024, the trial court dismissed Mrs. Hurley's complaint for declaratory judgment for lack of subject-matter jurisdiction, denied her motion for summary judgment, and granted the HOA's motion for summary judgment on its counter-complaint.  The trial court entered its final judgment on March 15, 2024, wherein it awarded the HOA $40,261.50 in attorney's fees and costs under the CCR.  Mrs. Hurley filed a timely notice of appeal, and the trial court stayed proceedings pending the outcome of this appeal.

## II. Issues

Appellant raises the following issues as stated in her brief:

1. Whether the trial court erred by concluding that Petitioner's decision to clean the roof of her historic home violated a contractual provision requiring HOA approval of proposed architectural improvements and changes.
2. Whether the trial court erred by concluding that there were no genuine

issues of material fact that the ARC's approval of the Carriage House plan required replacing the Main House roof.

3. Whether the trial court erred by ordering Petitioner to replace her roof without conducting any of the fact-specific equitable analysis long required by Tennessee law prior to entry of such an order.

4. Whether the trial court erred in awarding equitable relief despite the fact that the HOA's violation of the covenant of good faith and fair dealing left it with unclean hands.

5. Whether the trial court abused its discretion when it dismissed Petitioner's request for declaratory relief for failure to join all property owners with potential interests in the Green Shadows Declaration of Covenants, Conditions, and Restrictions without considering whether any such potential interest was justiciable.

The HOA seeks appellate attorney's fees and costs.

### III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Green v. Green***, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "When a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co.,*** [***Ltd. v. Zenith Radio Corp.***], 475 U.S. [574,] 586, 106 S. Ct. 1348

[(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

## IV. Declaratory Judgment

The trial court granted the HOA's motion for summary judgment, in part, on its determination that Mrs. Hurley could not proceed under the DJA. Specifically, the order states:

Ms. Hurley seeks declaratory relief. Whenever declaratory relief is brought before a court, that court must first consider whether it has subject-matter jurisdiction. The Association has drawn the Court's attention to a 2023 case from the Tennessee Court of Appeals, *Brock v. Eick*, No. E2023-00021-COA-R3-CV, 2023 WL 7102336 (Tenn. Ct. App. June 21, 2023). After reviewing the case, the Court is inclined to agree with the Association that the Court lacks subject-matter jurisdiction to grant declaratory relief for failure to join all property owners within Green Shadows. ln accordance with *Eick*, the Court concludes that all property owners with interest in the Declaration must be joined to avoid inconsistent results in the future.

The Petition for Declaratory and injunction relief is hereby DISMISSED for lack of subject-matter jurisdiction.

Section 29-14-107 of the DJA states that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." The Tennessee Supreme Court has explained that:

Parties are determined to be necessary when their absence from the action could cause recurring litigation on the same subject because the declaratory judgment, if rendered, "would not terminate the uncertainty or controversy giving rise to the proceedings." *Id.* (citing *Commercial Cas.* [*Ins. Co. v. Tri-State Transit Co. of La.*], 146 S.W.2d [135,] at 136 [(Tenn. 1941)]; *see also Huntsville Util. Dist. of Scott Cnty., Tenn. v. General Trust Co.*, 839 S.W.2d 397, 404 (1992) (stating that failure to join necessary parties "could result in inconsistent rulings and unnecessary duplicative litigation"); *Edmondson v. Henderson*, 246 N.C. 634, 99 S.E.2d 869, 871 (1957) (quoting *Equitable Life Assurance Soc'y of U.S. v. Basnight*, 234 N.C. 347, 67 S.E.2d 390, 395 (1951)) ("'Necessary parties are those persons who have rights which must be ascertained and settled before the rights of the parties to the suit can be

determined.'"). . . .

Whether a party must be joined "'in a declaratory judgment action depends on the type of case and the issues involved.'" ***Adler v. Double Eagle Props. Holdings, LLC***, No. W2010-01412-COA-R3-CV, 2011 WL 862948, at \*3 (Tenn. Ct. App. Mar. 14, 2011) (quoting ***Byrn v. Metro. Bd. of Pub. Educ.***, No. 01-A-019003CV00124, 1991 WL 7806, at \*5 (Tenn. Ct. App. Jan. 30, 1991)). Declaratory relief will be granted "only to parties who have a real interest in the litigation and when the case involves present rights that have accrued under presently existing facts." ***Dobbs v. Guenther***, 846 S.W.2d 270, 275 (Tenn. Ct. App. 1992) (citations omitted).

Parties who might be remotely affected by the declaratory judgment need not be joined. ***Timmins*** [***v. Lindsey***], 310 S.W.3d [834,] at 839 [(Tenn. Ct. App. 2009)] (citing ***Shelby Cnty. Bd. of Comm'rs v. Shelby Cnty. Quarterly Ct.***, 216 Tenn. 470, 392 S.W.2d 935, 940 (1965)). . . .

***Tennessee Farmers Mut. Ins. Co. v. DeBruce***, 586 S.W.3d 901, 906-907 (Tenn. 2019). A trial court's determination of which parties are necessary to a declaratory judgment action is discretionary and can be reversed only for abuse of that discretion. ***Timmins v. Lindsey***, 310 S.W.3d 834, 839 (Tenn. Ct. App. 2009). An abuse of discretion is found when the trial court applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that caused an injustice to the complaining party. ***Discover Bank v. Morgan***, 363 S.W.3d 479, 487 (Tenn. 2012) (citing ***State v. Jordan***, 325 S.W.3d 1, 39 (Tenn. 2010)).

As set out in its order, *supra*, in denying the declaratory judgment action, the trial court relied on this Court's opinion in ***Brock.*** In ***Brock***, a declaratory judgment action was brought by one property owner against another, both of whom lived in the Red Cloud development. All properties within the development were subject to certain protective covenants and restrictions. ***Brock***, 2023 WL 7102336, at \*1. However, unlike the instant case, in ***Brock***, there was no homeowners' association. The dispute in ***Brock*** arose when the defendant Mr. Eich, "a real property owner in [the subdivision], began advertising and renting his home in [the subdivision] as a vacation rental to visitors on websites such as VRBO and Airbnb." *Id.* Mr. Brock, another property owner, filed a complaint for declaratory judgment against only Mr. Eich, seeking to enjoin him from renting his home. Mr. Eich moved for dismissal on the ground that Mr. Brock failed to join all necessary parties as required under the DJA, thus depriving the trial court of subject-matter jurisdiction. The trial court granted Mr. Eich's motion on its finding that

the remaining lot owners in the Red Cloud development subject to the restrictive covenants upon which Mr. Brock couches this lawsuit are necessary here because their absence from this action could and, indeed, will

likely cause recurring litigation related to whether short-term rentals ("STRs") are a business purpose that violate the restrictive covenants. This is particularly applicable in this case where Red Cloud has no homeowners' association to represent the lot owners . . . .

On appeal, this Court "affirm[ed] the trial court's dismissal of Plaintiff's declaratory judgment action for lack of subject-matter jurisdiction due to the absence of necessary parties." *Id.* at *8.

The trial court in ***Brock*** made a clear finding concerning how the rights of the absent parties would be affected by the declaration, *i.e.*, "because their absence from this action could and, indeed, will likely cause recurring litigation related to whether short-term rentals ("STRs") are a business purpose that violate the restrictive covenants." Here, the trial court made no such finding. Rather, as set out in context above, it merely recited the applicable law, *i.e.*, "all property owners with interest in the Declaration must be joined to avoid inconsistent results in the future." This is merely a restatement of section 29-14-107 of the DJA, which requires joinder of all parties "who have or claim any interest which would be affected by the declaration." Although the trial court's order concludes that such parties would include "all property owners within Green Shadows," the other property owners' statuses as necessary parties hinges on whether they have "any interest which would be affected by the declaration." Tenn. Code Ann. § 29-14-107(a). Unfortunately, the trial court made no findings concerning what interests the other owners might have in a declaration concerning whether Mrs. Hurley's must replace her roof. Of course, we are cognizant that a trial court specifically is not required to make findings of fact when ruling on summary judgment motions. Tenn. R. Civ. P. 52.01 ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56."). However, as this Court has explained, although

Rule 52.01 rather than 56.04 [] addresses mandatory factual findings[,] and [] Rule 52.01 is expressly inapplicable to motions for summary judgment,[] [u]nder Rule 56.04, [] a trial court in granting or denying a motion for summary judgment "shall state the legal grounds upon which the court denies or grants the motion." The trial court "has a duty to ensure that its rulings are adequately explained," ***Vaughn v. DMC-Memphis, LLC***, No. W2019-00886-COA-R3-CV, 2021 WL 274761, at *11 (Tenn. Ct. App. Jan. 27, 2021), so as to avoid creating a circumstance in which an appellate court is "left to guess as to why the trial court reached its conclusion." ***Calzada v. State Volunteer Mut. Ins. Co.***, No. M2020-01697-COA-R3-CV, 2021 WL 5368020, at *8 (Tenn. Ct. App. Nov. 18, 2021).

***Etheredge v. Etheredge***, No. M2022-00451-COA-R3-CV, 2023 WL 5367681, at *8 (Tenn. Ct. App. Aug. 22, 2023). In the absence of a finding concerning what interests of the other owners would be affected by a declaration concerning this Property, we are left

to guess the basis of the trial court's decision to deny declaratory relief. Deprived of the opportunity to conduct a meaningful review of this question, we vacate the trial court's order dismissing Mrs. Hurley's declaratory judgment action. In its final order, the trial court states "that Ms. Hurley's declaratory action and the Association's counterclaim are two sides of the same coin. Defense and prosecution of this case are indistinguishable." Although, by their cross-complaints, the parties may seek opposite answers to the same question, *i.e.* whether the Main House roof must be replaced, as a threshold question on remand, we instruct the trial court to reconsider whether all Green Shadows homeowners are necessary parties under section 29-14-107 and to make sufficient findings on the question. ***Id.***

## V. Summary Judgment

In its order granting the HOA's motion for summary judgment, the trial court held, in relevant part:

> The Court finds that the [CCR] is enforceable. The [CCR] requires written approval from the Association when a change is made to any property within Green Shadows. The color of Hurley's [M]ain [H]ouse roof is now different from the color of the Carriage House, and the intent of the parties when written approval was given was to re-roof both the Main House and the Carriage House. Instead of re-roofing, Ms. Hurley washed the roof and the [ARC] found that the Property was not, therefore, in compliance. The Court concludes that the Plaintiff, Ms. Hurley, failed to comply with Paragraph 16 of the [CCR] and is required to bring the Property into compliance with the [CCR] and rules of the Association.

We conclude that there are disputes of material fact that preclude the grant of summary judgment. As set out in context above, the trial court granted the HOA's motion, in part, on its finding that "the intent of the parties when written approval was given was to re-roof the Main House and the Carriage House." This "finding" not only presumes that the parties' intent always was to replace both roofs, but it also presumes HOA approval of such plan. From our review, these "facts" are disputed.

First, the question of whether the parties had a valid agreement (and, if so, what the agreement required from Mrs. Hurley) is not clear. In his affidavit filed in support of the HOA's motion for summary judgment, Mr. Fisher states that "[b]ased upon the edited document sent by Mr. Day, [Mrs. Hurley's first architect,] it was understood that the Main House on Ms. Hurley's Property would have new shingles, matching those on the Carriage House." The "edited document" that Mr. Day included in his email is attached as exhibit A to Mr. Fisher's affidavit. The document provides, in relevant part:

- 13 -

**The Green Shadows Architectural**
**Review Committee**
**c/o Richard L. Fisher**
**6624 Green Shadows Lane 38119**

October 31, 2018

**~~DRAFT 10/16/18~~**
**REVSED [sic] DRAFT 10/31/18**

Mrs. John Hurley
6562 Green Shadows Lane
Memphis, TN 38119

Re: Renovation Plans for 6562 Green Shadows Lane:

Dear Mimi:

***

3. It is our understanding that the roof shingle for the renovated [Carriage] House will be re-roofed with the shingle . . . manufactured by GAF Slateline HD. A completely new roof will be installed on the Main House, with the same shingle.

***


   Subject to the conditions outlined herein, and the referenced attachments, the plans you submitted are approved, and I have provided two duplicate originals of this letter.  Please sign each letter where indicated, and initial each attachment.  I will be happy to provide you with an original of this correspondence after I sign both sets.  At your request and upon completion of the work shown on the plans, we will send you a Certificate of Compliance in recordable form.

   I hope this path forward is acceptable to all referenced herein.  Thanks very much for your participation in such an exciting renovation.

The Green Shadows Architectural Review Committee

Richard L. Fisher

(Strikethrough in original). Concerning this document, Mrs. Hurley's responses to the HOA's statements of undisputed material facts provide:

> 13. According to Ms. Hurley, in 2018, she submitted a "comprehensive restoration plan" for the Property. Ms. Hurley claims that it was "conditionally approved by the Association's Architectural Committee in 2018, although Mrs. Hurley has no written permission." (Petition for Declaratory and Injunctive Relief at ¶ 63).
> RESPONSE: Agreed for Purposes of Summary Judgment

The HOA's responses to Mrs. Hurley's statement of undisputed material facts filed in support of her motion for summary judgment states:

> 33. In 2018, Mrs. Hurley submitted a comprehensive renovation plan to the Association that was prepared by her then-contractor. This plan included renovations to the Carriage House; maintenance and repairs to the Main House; and the addition of a pool and patio to the back yard. (Declaration of Marilee Z. Hurley ¶ 39).
> RESPONSE: It is undisputed that plans were submitted. The balance of the Statement, however, references a writing. If Ms. Hurley wishes to rely upon its contents, she would need to produce that writing. Nonetheless, the Statement is immaterial.

The applicability of the 2018 "comprehensive renovation plan" is disputed. Although the parties agree that Mr. Day submitted a document, as set out in context above, the document states that it is a "Draft," and further appears to be a proposed letter outlining understandings by and between Mrs. Hurley and the HOA. The salutation reads, "Dear Mimi."[1] The valediction reads:

> The Green Shadows Architectural Review Committee
>
> Richard L. Fisher

So, in the first instance, there is some confusion concerning what the document was meant to accomplish in terms of the scope of work on the Property, but assuming the document submitted by Mr. Day constitutes a "comprehensive renovation plan," there is dispute as to whether the HOA approved the plan. The document contemplates further action on the part of the parties before it can be deemed "approved," *i.e.* "Subject to the conditions outlined herein, and the referenced attachments, the plans you submitted are approved, and I have provided two duplicate originals of this letter. Please sign each letter where indicated, and initial each attachment." There is nothing in the record to indicate that either

---

[1] The record indicates that "Mimi" is Mrs. Hurley.

an HOA representative or Mrs. Hurley signed anything regarding the 2018 plan. Indeed, in her response, *supra*, Mrs. Hurley admits that she "has no written permission" to proceed with the 2018 plan. Finally, as set out in the HOA's response to Mrs. Hurley's statement of material facts:

> 35. Mrs. Hurley did not move forward with any component of her comprehensive plan in 2018. (Declaration of Marilee Z, Hurley ¶ 42), RESPONSE: Undisputed.

From the foregoing, there are disputes concerning: (1) whether the 2018 document sent by Mr. Day constitutes an architectural plan for renovation of the Property; (2). if so, whether the HOA approved the plan; and (3) if approved, whether Mrs. Hurley abandoned the plan in favor of a scaled down plan submitted in 2020.

Turning to Mrs. Hurley's 2020 submission to the HOA, the parties do not dispute that, on November 18, 2020, Mrs. Hurley's contractor "submitted her scaled back plan in an email to Rita Allen of the Green Shadows [HOA]." Mrs. Hurley asserts that her contractor was not authorized to submit the 2020 plans to the HOA. In its responses to Mrs. Hurley's statement of undisputed material facts, the HOA does not dispute that the contractor had no **actual** authority to submit a plan on Mrs. Hurley's behalf, but it disputes whether the contractor had **apparent** authority to submit them, to-wit:

> 3, Mrs. Hurley never authorized her then-contractor, either verbally or in writing, to commit to any actions on her behalf without her knowledge and expressed consent. (Declaration of Marilee Z. Hurley ¶ 50).
>
> RESPONSE: The Association cannot dispute the Statement. What is relevant, however, are outward manifestations of the Contractor's authority to act on Ms. Hurley's behalf. . . .

The question of the contractor's apparent authority is unresolved, but even assuming the 2020 plan was properly submitted to the HOA, the parties dispute whether it was approved. As set out in the HOA's responses to Mrs. Hurley's statement of undisputed material facts:

> 42. This new plan was approved by the HOA. (Declaration of Marilee Z. Hurley ¶ 49).
> RESPONSE: This Statement of Fact is not supported by the Hurley Declaration. In the referenced Paragraph, Ms. Hurley merely indicates that, to the best of her knowledge, the plan was approved without conditions. The Statement, therefore, is disputed as stated.

However, assuming that the 2020 plan was properly submitted and approved, the parties still dispute whether the 2020 submission was: (1) a new plan requiring replacement of the

Carriage House roof only; (2) an affirmance of the 2018 plan to replace both the Main House and Carriage House roofs with the same shingles; or (3) an amendment to the 2018 plan, whereby the initial plan to replace the Main House roof was withdrawn. Mrs. Hurley asserts that she abandoned the 2018 plan, and the 2020 plan "focused exclusively on resolving the stormwater drainage problem and salvaging and restoring the Carriage House." As noted above, on November 18, 2020, Mrs. Hurley "submitted her scaled back plan in an email to Rita Allen of the Green Shadows [HOA]." In relevant part, the email states, "We are trying to get a pick for the shingles we will be using to replicate what the shingles look like now. As soon as we have the shingles picked out I will send you the spec. In essence the back house will look the same as it currently looks." The parties dispute whether the "shingles" discussed in the email were shingles for the Carriage House only, or whether they were "shingles" for both the Carriage House and the Main House.

In addition to the foregoing disputes of material fact, there is also dispute concerning whether Mrs. Hurley was required to seek HOA approval before cleaning the Main House roof. The HOA's counter-complaint asserts that, "The color change [of the Main House roof after cleaning] is unacceptable to the Association. The change was made without the written permission of the Association. That is a violation of the [CCR]." In its order granting the HOA's motion for summary judgment, the trial court states, in part, that Mrs. Hurley "failed to comply with Paragraph 16 of the [CCR]." As set out in the February 18, 2022 letter from the HOA's attorney to Mrs. Hurley, *supra*, Paragraph 16 of the CCR requires written approval from ARC for any "improvement or change" to the Property, but Paragraph 18 of the CCR, which the HOA also cites, does not require written approval for maintenance. Although there is a dispute concerning which paragraph of the CCR applies, the trial court found that Mrs. Hurley violated Paragraph 16, but she maintains that cleaning the Main House roof was maintenance (subject to Paragraph 18 of the CCR) and not a change or improvement requiring approval of the ARC. Although the question of whether cleaning the roof is maintenance or improvement has not been resolved, the HOA asserts that, even if the cleaning constitutes maintenance, it resulted in a change to the color of the roof that is not "acceptable" to the HOA. Indeed, Paragraph 18 of the CCR provides, in part, that lot owners "shall . . . maintain the premises and the improvements situated thereon in a manner **reasonably satisfactory to the [ARC]** or the Committed, and **in keeping with the other lots**" (emphases added). The emphasized language creates more dispute. Mrs. Hurley asserts that her decision to clean the Main House roof was maintenance because it removed the build-up of moss and sediment that had accumulated over the years and caused the Main House roof to darken from its original color. As such, she contends that there was no need for the HOA to approve the cleaning and that she was merely maintaining the Main House in compliance with Paragraph 18 of the CCA. The HOA contends that, if cleaning the roof was an improvement, it was not approved under Paragraph 16 of the CCR, but if it was maintenance, then the change in the roof's color was not "reasonably satisfactory to the [ARC]" and was not "in keeping with the other lots." As discussed in detail above, the Hurley Property pre-existed the development, and it has always been anomalous when compared to other homes that have been built in the development.

- 17 -

Specifically, no other homes have concrete tile roofs. These facts create dispute as to whether Mrs. Hurley's home should be held to a standard "in keeping with other lots," when her Property has never been "in keeping with other lots." Furthermore, the question remains whether the Excellent Roofing opinion that the Main House roof is sound should bear on the question of whether the original roof of the Main House must be replaced to achieve cosmetic congruity between it, the Carriage House, and "other lots." There is also the question of whether the historical significance of the Main House, and specifically its place on the National Register of Historic Places by the National Park Service of the United States Department of the Interior, should bear on the question of removal and replacement of its original roof. The unique nature of this Property goes to the question of whether the HOA's mandate to replace the Main House roof was reasonable. None of these questions have been answered. In sum, the record is replete with disputes of facts that negate the trial court's grant of summary judgment to the HOA, and we reverse its decision.

Having reversed the trial court's grant of summary judgment to the HOA, we deny its request for appellate attorney's fees.

### VI. Conclusion

For the foregoing reasons, we vacate the trial court's court order dismissing Mrs. Hurley's complaint for declaratory judgment. We reverse the trial court's grant of the HOA's motion for summary judgment on its counter-complaint. We reverse the trial court's March 15, 2024 order awarding the HOA attorney's fees and costs. The HOA's request for appellate attorney's fees is denied, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, Green Shadows Homeowners Association, Inc. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE